DOUGLAS MILZ, Plaintiff-Appellant, v. M.J. MEADOWS, INC., Defendant-Appellee.

First District (4th Division)   No. 1—91—1517

Opinion filed August 27, 1992.

James E. Pancratz, of Chicago, for appellant.

Robert Marc Chemers, Robert J. Franco, and Andrew G. Witik, all of Pretzel & Stouffer, Chartered, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

This is an appeal from the dismissal of count III of plaintiff's second amended complaint seeking recovery for personal injuries and property damages. On appeal, plaintiff contends that the trial court erred in finding that defendant owed no duty to plaintiff, and that defendant's motion to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) (the Code) was procedurally improper.

On November 29, 1989, plaintiff, Douglas Milz, brought suit against defendant, M.J. Meadows, Inc., and codefendants P N P Landscaping, Inc. (PNP), and PNP's president, Matthew Pecora, for injuries plaintiff sustained when the motorcycle he was driving collided with a parked flatbed construction trailer at approximately 11 p.m. on August 11, 1989, in the Village of Arlington Heights (the Village).

Count III of plaintiff's complaint alleged that defendant owned, controlled and maintained two residential lots on the 300 block of North Douglas Avenue on which defendant was constructing single-family houses; that sometime prior to the date of the collision, defendant contracted with PNP to provide grading and landscaping services on the lots; that as part of the construction project a utility trailer was parked by defendant and PNP facing south along the east side of Douglas Avenue at or near one of defendant's lots; and that plaintiff was injured when his northbound motorcycle collided with the front of the trailer.

Plaintiff further alleged that defendant owed him a legal duty to exercise due care in the operation, control, maintenance and use of construction vehicles on or about the construction site and to not obstruct traffic on public ways with such vehicles. The complaint alleged that defendant breached its duty to plaintiff by carelessly and negligently: controlling and supervising the use of the trailer; failing to adequately supervise the use and placement of construction vehicles on or near the construction site; allowing the trailer to be illegally parked by facing the wrong direction; and allowing on or near the construction site the use of construction vehicles which were unsafe and not equipped with devices

designed to warn motorists. Plaintiff alleged that these acts and omissions were the proximate cause of his injuries and damages.

On March 22, 1990, defendant filed an answer in which it admitted ownership of the lots, that it had hired PNP to perform grading work, and that the trailer was parked in front of or near its lot at 309 North Douglas. Defendant denied, however, that it owed a duty to plaintiff with respect to the matters alleged in the complaint, and also denied that it controlled or used the trailer involved in the collision. Defendant also asserted that plaintiff had failed to exercise reasonable care for his own safety by failing to drive in a cautionary manner, to maintain a proper lookout and to otherwise protect himself from dangers on the roadway.

On December 7, 1990, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2—619 of the Code on the ground that it owed no duty to plaintiff in connection with the accident. In a memorandum attached to the motion, defendant stated, *inter alia*, the following: that the trailer involved in the collision was owned by PNP; that prior to the date of the accident defendant had hired PNP to perform excavating, grading and garbage removal on certain of defendant's lots in the subdivision; and that at no time did defendant supervise PNP in its work, nor did defendant ever maintain control over the placement of PNP's vehicles.

Also attached to the motion to dismiss was the affidavit of defendant's president, Martin Meadow. Meadow averred that he was required by law to be, and was, licensed as a general contractor; that on August 11, 1989, a home was under construction at defendant's lot at 309 North Douglas Avenue; that on the date of the accident, the work performed by PNP for defendant was the removal of trash from lot 3 on Hickory Avenue; and that PNP used its own equipment, and at no time did defendant possess or control the trailer, or supervise PNP's work, nor did defendant authorize, supervise or control the placement of the trailer by PNP or any of its employees.

In support of dismissal, defendant argued that it owed no duty to plaintiff to keep public streets clear of property not owned, possessed or controlled by it, and that general contractors are not liable for the acts of a subcontractor when the general contractor does not control the details of the subcontractor's work. Defendant asserted that because plaintiff failed to allege any facts to support his conclusion that defendant owed him a legal duty, the complaint was deficient as a matter of law.

In response, plaintiff argued that the motion to dismiss did not raise affirmative matters as required by section 2—619(9)(a) of the Code, but merely attacked the sufficiency of the complaint. Plaintiff asserted that

the motion was, therefore, actually a motion pursuant to section 2—615 of the Code, and that because section 2—615 does not allow inclusion of supporting affidavits, the court should strike Meadow's affidavit and deny the motion to dismiss for lack of any affirmative matter defeating plaintiff's claim.

Attached to plaintiff's response were excerpts from the depositions of Meadow and Pecora, and defendant's application for a contractor's license from the Village. Plaintiff asserted that a duty was imposed upon defendant by the Village ordinance which required all contractors to keep the site of construction activities free of unguarded, dangerous implements, and prohibited contractors from obstructing traffic on public walks and streets. Plaintiff maintained that by applying for a license as a general contractor, defendant accepted the duty of conforming to the Village code, which was enacted for the public safety, and that, at the very least, there was a question of fact as to whether defendant breached that duty by allowing the trailer to be improperly parked on Douglas Avenue. Plaintiff further argued that as the owner of lot 6, defendant owed plaintiff a duty to keep the street abutting its property free from vehicles and conditions which could create a hazard to motorists such as plaintiff. Plaintiff also asserted that Meadow admitted having made inspections of the construction project at least once a week, and, by undertaking such inspections, he acknowledged the obligation of defendant to comply with the Village ordinances and assumed a duty to exercise reasonable care in conducting inspections.

Defendant filed a reply disputing plaintiff's arguments. Following a hearing, the transcript of which is not contained in the record, the trial court granted defendant's motion to dismiss with prejudice. This appeal followed.

■ We first consider plaintiff's contention that defendant's motion to dismiss pursuant to section 2—619 was improper because it did not raise affirmative matters but merely attacked the factual sufficiency of count III of the complaint. The purpose of section 2—619 is primarily that of affording a means to obtain summary disposition of issues of law or easily proven issues of fact at the outset of a case. (Ill. Ann. Stat., ch. 110, par. 2—619, Historical & Practice Notes, at 662 (Smith-Hurd 1983).) Subparagraph (a)(9) provides for the raising of affirmative matter which avoids or defeats a claim or cause of action. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9).) "Affirmative matter" must be more than an assertion that the complaint fails to plead sufficient facts to state a cause of action, or evidence offered to refute a well-pleaded fact. However, Illinois case law holds that "affirmative matter" may be "something in the nature of a defense that negates the alleged cause of

action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 134-35, 488 N.E.2d 623, 628.

It is fundamental that a complaint for negligence must set out the existence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the defendant's breach of duty. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) Whether a duty exists is a question of law to be determined by the court (*Perkaus*, 140 Ill. App. 3d at 132), and the nonexistence of a duty may be the basis for a section 2—619 motion to dismiss (*Johnson v. Hilton Hotel Corp.* (1989), 190 Ill. App. 3d 197, 546 N.E.2d 617; *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 488 N.E.2d 623; *Cross v. Moehring* (1989), 188 Ill. App. 3d 830, 544 N.E.2d 1259).

■ In the instant case, plaintiff alleges that defendant owed him both a statutory and common law duty stemming from defendant's alleged control and supervision of the use and placement of the trailer with which plaintiff collided. Defendant's motion and accompanying affidavit averred that defendant did not own the trailer, nor did it maintain, supervise or otherwise control the use of it or the placement of it upon the public roadway where the collision occurred, and consequently defendant owed no duty to plaintiff. Since the absence of a duty wholly negates a cause of action for negligence (*Frankel v. Otiswear, Inc.* (1991), 216 Ill. App. 3d 204, 576 N.E.2d 955), we do not believe that defendant's use of a section 2—619 motion to dismiss was improper. See *Johnson v. Hilton Hotel Corp.*, 190 Ill. App. 3d 197, 546 N.E.2d 617; *Cross v. Moehring*, 188 Ill. App. 3d 830, 544 N.E.2d 1259; *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 488 N.E.2d 623.

We turn now to the propriety of the order of dismissal. Plaintiff contends that defendant's liability arises from a statutory duty created by the Village's Municipal Code. Section 14—306 provides in part:

"Duties of licensee. *** It shall be the duty of all building contractors licensed hereunder to comply with all the provisions of this Code, relating to or regulating their activities as building contractors and, in addition thereto, to remove or cause to be removed at least once each week from the site of said building contractor's activities all trash, refuse and waste materials. Building contractors shall at all times keep the site of activities in an orderly condition, free from standing water, unguarded dangerous

implements, and health and safety hazards. Building contractors shall not obstruct traffic, street or sidewalks nor permit dirt or waste materials from falling or being carried onto such public ways." (Arlington Heights, Ill., Municipal Code §14—306.)

Section 14—301 defines "building contractor" as:

"[a]ny person who engages in the construction, repair or alteration of any building, structure, or street or sidewalk pavement within the Village, for which a building permit is required." (Arlington Heights, Ill., Municipal Code §14—301.)

The ordinance lists numerous types of contractors to which the ordinance applies, and includes those who engage in excavating, moving and landscaping.

Plaintiff asserts that by applying for a license and engaging in general building contracting, defendant had a statutory duty to obey and enforce the Village ordinances relating to building activities. Plaintiff argues that the Village code imposed upon defendant an absolute duty to maintain its construction site in a safe manner, free of unguarded and hazardous equipment and vehicles, and to prevent such equipment and vehicles from obstructing traffic and endangering motorists on the adjoining public ways.

Defendant does not dispute that the Village code imposes a duty upon it with respect to its own construction site and activities. Defendant argues, however, that the interpretation plaintiff ascribes to section 14—306 is overly broad and would place upon contractors the unreasonable burden of monitoring the activities of other contractors. Defendant maintains that section 14—306 does not impose a duty on any individual building contractor to police or regulate the activities of other individual contractors in the use and placement of their equipment. Rather, defendant asserts, section 14—306 places a duty upon each contractor to perform *its* work and maintain the site of *its* activities in a safe manner and condition and to not obstruct public ways with *its* equipment. We agree.

■ Section 14—306 places a duty upon all building contractors "to comply with all provisions of this Code relating to or regulating *their activities*." (Emphasis added.) (Arlington Heights, Ill., Municipal Code §14—306.) The term "building contractor" is not limited to general contractors, but includes anyone who engages in any of the more than 20 trades listed in section 14—301, including those who perform excavating, moving and landscaping. Thus, when these sections are read together, it is clear from the plain language used that the intent of the drafters was to impose a duty upon each individual contractor to comply with the provisions of the code, one of which is to not ob-

struct traffic or streets, in the performance of its own contracting activities.

Plaintiff does not allege that defendant owned the construction trailer involved in the collision, nor does the complaint contain any facts to support plaintiff's allegation that defendant controlled or supervised the use of the trailer or its placement on a public street on the date of the collision. In his affidavit, Martin Meadow expressly stated that he did not own the trailer or control or supervise PNP's use of it; nor, on the day in question, did he even hire PNP to perform any work on the construction site in front of which the collision occurred. Section 14—306 of the code imposed upon defendant a duty to maintain the construction site in a safe condition and to not obstruct public walks and streets. The ordinance does not, however, impose upon defendant a duty to ensure that another contractor's construction vehicle did not obstruct traffic on a public street.

Plaintiff also contends that defendant owed him a duty under principles of common law. Plaintiff cites *Chicago Economic Fuel Gas Co. v. Myers* (1897), 168 Ill. 139, 48 N.E. 66, *North Chicago Street R.R. Co. v. Dudgeon* (1900), 184 Ill. 477, 56 N.E. 796, and *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 317 N.E.2d 369, for the proposition that a corporation engaging in activities under a license granted by a public authority is liable for the negligence of a subcontractor. Plaintiff then asserts that, as the licensed general contractor of the construction project, defendant is vicariously liable for the alleged negligence of the subcontractor, PNP, in improperly parking the trailer on the street in front of the construction site.

■■ The general rule of law is that an employer is not liable for the negligence of an independent contractor except where the employer orders or directs the acts causing the harm, negligently selects an incompetent contractor, or retains control over the operative details of the contractor's work. *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 276 N.E.2d 336; *Dvorak v. Primus Corp.* (1988), 168 Ill. App. 3d 625, 522 N.E.2d 881.

The courts in the cases cited by plaintiff expressly recognized, with approval, this longstanding rule, but found that on the facts before them the rule was inapplicable. *Chicago Economic Fuel Gas Co. v. Myers*, 168 Ill. 139, 48 N.E. 66; *North Chicago Street R.R. Co. v. Dudgeon*, 184 Ill. 477, 56 N.E. 791; *Reith v. General Telephone Co.* (1974), 22 Ill. App. 3d 337, 317 N.E.2d 369.

■■ The facts in those cases are distinguishable from the facts before us. First, defendant is not a public utility, nor was it acting under a special, exclusive license in its construction of the residences on

Douglas Avenue. The license obtained by defendant was merely one to engage in activities as a general building contractor within the Village. There was nothing intrinsically dangerous about the construction project itself, nor, more specifically, about the work defendant periodically hired PNP to perform, *i.e.*, trash removal and grading of various lots belonging to defendant in the Hickory Woods subdivision. Nor, in performing such work, was PNP exercising some power or privilege which could not be exercised independently of defendant's charter or license.

Further, plaintiff did not allege facts stating, or from which it could be inferred, that defendant ordered or directed the manner in which PNP performed its work or placed its vehicles, or that defendant otherwise retained control over the "operative details" of PNP's work. Neither are there any other factual allegations supporting an inference that PNP was actually a servant or agent of defendant rather than an independent contractor for whose negligence defendant is not liable.

Indeed, in his affidavit and deposition testimony, Martin Meadow expressly denied that he supervised or controlled PNP in the performance of its work. He stated that PNP worked for defendant under an oral agreement, was paid by the job and used and was responsible for its own equipment. As shown by an invoice submitted by PNP, on the day in question PNP did not even perform any work at the Douglas Street lot in front of which the collision occurred but, rather, at a lot on Hickory Avenue, one street west of Douglas Avenue.

Matthew Pecora, president of PNP, testified in his deposition that during the summer of 1989, PNP performed landscaping, grading and trash removal for defendant as well as landscaping work for individual homeowners in the Hickory Woods subdivision. The trailer was owned by his company and parked on Douglas Avenue by one of his employees. Pecora stated that it was his policy that all vehicles be returned to PNP's yard at the end of a workday, and that prior to the date of the collision, none of PNP's vehicles were left parked on a Village street overnight. Defendant's representatives did not inspect any of PNP's vehicles, nor did they direct PNP where to park its vehicles or place its equipment, except on a few occasions when vehicles had to be moved to allow ingress and egress of delivery or material trucks at the construction site. Pecora further stated that defendant did not direct PNP or its employees in the performance of their work; defendant's only instructions were where and when a job was to be performed. Pecora assumed that defendant inspected a completed job be-

fore making payment to PNP, but he did not recall ever seeing anyone from defendant conduct such an inspection.

It is clear from the above evidence that PNP was not an agent or servant of defendant, nor was it performing hazardous work for which defendant had been issued an exclusive or special license or permit, as was the situation in each of the cases cited by plaintiff in support of his argument that defendant is vicariously liable for PNP's alleged negligence. Rather, it is clear that Pecora was self-employed and doing business through PNP as an independent contractor. Thus, this case is governed by the longstanding, general rule that an employer owes no duty to a third party for injuries resulting from the negligence of an independent contractor. *Dvorak v. Primus Corp.* (1988), 168 Ill. App. 3d 625, 522 N.E.2d 881.

Relying on *Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 246 N.E.2d 19, plaintiff also contends that as the owner of the property at 309 North Douglas Avenue, defendant owed a nondelegable common law duty to keep the street in front of his property free from any condition which might have created a danger or hazard to persons, like himself, who are lawfully on the roadway.

Plaintiff's reliance on *Donovan* is misplaced. In *Donovan* the plaintiff was injured when she tripped over a roll of wire mesh which fell in front of her as she was walking on a sidewalk in front of a building which was under renovation. The sidewalk had been narrowed by the placement of scaffolding and construction equipment and materials on it, and the street was blocked by a parked car, leaving plaintiff with nowhere else to walk. Plaintiff brought suit against the masonry contractors who stacked the rolls of mesh and the owner of the building. In reversing the directed verdict for the owner, the appellate court stated that the owner of the building owed the plaintiff a duty to keep the *sidewalk* which abutted his property free of any dangerous or hazardous conditions which were foreseeable sources of injury to passersby including those placed upon the walkway by independent contractors hired by the owner.

The present case involves a stationary vehicle, which, as discussed in detail above, defendant did not own, possess, control or supervise; which was parked on a public street by an employee of PNP; and which, according to PNP's invoices, had not even been used to perform work on the construction site in front of which it was parked on the day of the collision. Plaintiff has cited no cases, nor have we found any, which have extended the holding in *Donovan*, relating to hazardous conditions on sidewalks, to impose a duty upon landowners to prevent the illegal parking of vehicles which are not owned, con-

trolled or even engaged in any contracting activities for the owner, upon public streets. *Cf. Zimmerman v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502 (owner of parking lot had no duty to the plaintiff who was injured when he backed his car out and was struck by a car proceeding on the highway, because the collision did not occur upon the defendant's land, and no condition of the land, no structure on the land, and no activity conducted upon the land was alleged to have contributed to the collision).

As defendant argues, the imposition of such a duty would place an unreasonable, if not impossible, burden upon landowners to guard against the negligence of persons whose improper parking on public property results in injuries to other persons. For example, in *Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365, the supreme court held that a landowner whose driveway was obscured by foliage owed no duty to a bicyclist on the street who was struck by a dump truck backing out of the driveway. Quoting from an earlier decision, the court stated that " '[the] imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society.' " (142 Ill. 2d at 52, quoting *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 366.) The court observed that the plaintiff was seeking to impose a duty on the defendant to guard against an injury occurring off defendant's land, despite that the land itself posed no danger to the plaintiff. The court held that the imposition of such a duty would place too great a burden upon landowners.

The reasoning in *Ziemba* is applicable to the case before us. It would be unreasonable to impose a duty upon defendant to guard against the negligence of persons who park their vehicles on the public street in front of defendant's property where there is no allegation that any condition upon defendant's property contributed to the collision.

■ Finally, plaintiff contends that defendant voluntarily assumed a duty by undertaking to make inspections of the construction site. Plaintiff asserts that Meadow admitted in his deposition that during a six-month period prior to the date of the collision, it was his custom and practice to drive by and inspect the site at least once each week. Plaintiff argues that having undertaken to make inspections, defendant was bound to exercise reasonable care in doing so, and that there is a question of fact as to whether defendant breached the duty it assumed by permitting the presence of a hazardous condition on the street. We find no merit in plaintiff's argument.

Meadow testified at his deposition that "maybe once a week," when he was in the area between approximately 8 and 11 p.m., he

would drive by the construction site. His purpose was to check "for vandals, kids breaking into houses there." He did not inform any subcontractors that he did not wish them to park on Douglas Avenue during nonworking hours, nor did he ever direct any subcontractor at any construction site where to park or not park because "where they parked their trucks *** [was] under their control."

We find nothing in Meadow's testimony to support plaintiff's assertion that Meadow assumed a duty to inspect and ensure that the public street was clear of improperly parked vehicles on the date of the collision. The cases cited by plaintiff, *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, and *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, involved negligence in the provision of security guard services which the public authority voluntarily undertook to provide and are inapposite to the case before us.

As we have repeated throughout this decision, plaintiff has not alleged facts or presented evidence which establish or from which it can be inferred that defendant controlled or had any right to control PNP's use or placement of the trailer involved in the collision at issue; that some condition on defendant's property caused or contributed to the collision; or that defendant undertook a duty to guard against the negligence of others on the public street in front of his property. Absent such evidence, plaintiff has failed to establish the existence of either a statutory or common law duty owed or assumed by defendant to plaintiff. For these reasons, the trial court properly dismissed plaintiff's cause of action against defendant as a matter of law.

Affirmed.

JOHNSON and LINN, JJ., concur.