No. 2--06--0505          Filed 3-21-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RHONDA GILLEY, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03--L--133 |
| | ) | |
| GERALD KIDDEL, | ) | Honorable |
| | ) | Timothy R. Gill, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Rhonda Gilley, appeals from the involuntary dismissal (735 ILCS 5/2--619(a)(9) (West 2004)) of her amended complaint for negligence against defendant, Gerald Kiddel. The complaint was based on injuries plaintiff sustained when she fell down the stairs inside an apartment owned by defendant and leased to plaintiff's boyfriend, Roland Shipman. We affirm.

According to the discovery depositions of plaintiff, defendant, and Shipman, the following evidence was adduced. Shipman and two roommates leased the premises from October 2001 until June 2003. The stairs where the fall occurred were within the leased premises. Shipman testified that he inspected the premises before he moved in and did not notice a problem with the carpeting on the stairs. Several weeks after moving in, Shipman stapled the carpeting to the stairs "just for more grip." Shipman testified that both he and others had fallen on the stairs prior to plaintiff's fall.

Shipman believed he had told defendant about the prior falls. He stated, "I was trying to infer that I didn't particularly like the quality of the steps. Maybe I did it in a roundabout way just to be nice to my landlord but it was like we had a temporary covering and I was hoping for something more permanent." Shipman further testified that he "implied" that he wanted the carpeting altered in some way but he did not think he "ever came out and said it." Shipman testified, "I wouldn't say it was unsafe but it wasn't suitable for living there for almost 2 years, plus, if he was going to leave it there, he had done no maintenance on it at all." After plaintiff's fall, Shipman hoped defendant would remove the carpeting on the stairs, but, because he never did, Shipman himself removed the carpeting. Also, sometime before plaintiff's fall, the handrail along the stairs had come loose and Shipman repaired it by pushing the rail back into the wall.

On May 11, 2002, plaintiff was at Shipman's apartment and was heading down the stairs. Plaintiff had been up and down the stairs several times before and did not notice anything different on the night that she fell. Plaintiff was looking down the stairs and took about three steps when the "carpeting came loose" and her foot slid out from underneath her. As a result, she fell back and slid down the stairs to the bottom, breaking her ankle. Plaintiff had held onto the handrail, and the handrail did not come loose during her fall. The day after the fall, plaintiff noticed ripples in the carpeting. Shipman observed the stairs after plaintiff's fall and did not notice anything out of the ordinary.

Defendant testified that he owned and managed the premises and was responsible for collecting rent and receiving phone calls for problems. He testified that he did not usually personally perform repairs but rather 80% of the time he would hire a contractor to perform the work. When defendant bought the premises in July 2000, the stairs were in good condition, and defendant never

made any repairs or alterations to the carpeting. Between July 2000 and May 2002, he had been up and down the stairs between 25 and 50 times and never noticed any problems with the stairs. He never noticed any ripples in the carpeting. Furthermore, defendant testified that if he had observed any problem with the stairs and felt they needed repairs, he would have repaired them. According to the lease, the tenants were not authorized to make any alterations or repairs to the premises without defendant's authorization. The tenants never requested authorization to make any repairs to the stairs. Prior to May 11, 2002, no one ever complained to him about the condition of the stairs and no one reported any falls or accidents involving the stairs. Shipman called defendant soon after plaintiff's fall and told defendant that plaintiff fell down the stairs. Shipman stated that plaintiff was wearing sandals and lost her footing. Shipman did not report that there were any problems with the stairs.

Plaintiff filed a complaint, and defendant moved for summary judgment on the basis that defendant, as the landlord, was not liable for injuries caused by a defective condition on premises leased to the tenant and under the tenant's control. The motion was granted. Plaintiff subsequently filed a motion to reconsider the grant of summary judgment and a motion for leave to file an amended complaint. The court denied the motion for reconsideration but granted plaintiff leave to file the amended complaint. The amended complaint asserted that defendant "owed plaintiff a duty of care because the lessor contracted by a covenant in the lease or otherwise to keep the land in repair. *** [T]he lessor failed to exercise reasonable care to perform his contract."

Defendant moved to dismiss the amended complaint. 735 ILCS 5/2--619(a)(9) (West 2004). The trial court granted the motion, finding that "there is no duty on behalf of the defendant landlord." Plaintiff timely appealed.

Plaintiff argues that the trial court erred in granting both summary judgment and the motion to dismiss pursuant to section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 2004)). However, the issue of the propriety of the trial court's grant of summary judgment is not properly before this court, for when an amendment is filed that is complete in itself and that does not refer to or adopt by reference the prior pleadings, the earlier pleadings are effectively withdrawn and cease to be a part of the record for most purposes. Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 154 (1983), quoting Bowman v. County of Lake, 29 Ill. 2d 268, 272 (1963). Thus, the filing of an amended pleading waives any objection to the trial court's ruling on any former complaint. Foxcroft, 96 Ill. 2d at 154. Here, by filing an amended complaint, plaintiff was precluded from appealing the order on her original complaint, and we restrict our review to the court's dismissal of plaintiff's amended complaint.

The purpose of section 2--619 is to summarily dispose of issues of law or easily proved issues of fact at the outset of a case. Zedella v. Gibson, 165 Ill. 2d 181, 185 (1995); Milz v. M.J. Meadows, Inc., 234 Ill. App. 3d 281, 286 (1992). The motion "invokes certain defects or defenses that raise the question of whether the defendant is entitled to judgment as a matter of law." Albert Brooks Friedman, Ltd. v. Malevitis, 304 Ill. App. 3d 979, 983 (1999). Subparagraph (a)(9), in particular, provides for the raising of affirmative matter that avoids or defeats a claim or cause of action. 735 ILCS 5/2--619(a)(9) (West 2004). "Affirmative matter" is defined as a defense that either negates the alleged cause of action completely or refutes a crucial conclusion of law or conclusion of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. Krilich v. American National Bank & Trust Co., 334 Ill. App. 3d 563, 570 (2002); Milz, 234 Ill. App. 3d at 286-87. It "encompasses any defense other than a negation of the essential allegations

of the *** cause of action." Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 115 (1993); see, e.g., Young v. Chicago Housing Authority, 162 Ill. App. 3d 53, 54 (1987) (the issue of whether the defendant owed the plaintiff a duty of care is a question of law that is properly asserted in a motion to dismiss pursuant to section 2--619). In ruling on a section 2--619 motion to dismiss, a court may consider pleadings, depositions, and affidavits. Zedella, 165 Ill. 2d at 185.

The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." Kedzie, 156 Ill. 2d at 116-17. Our review is de novo. Krilich, 334 Ill. App. 3d at 569.

It is fundamental that to state a claim for negligence, a plaintiff must establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of such breach. Milz, 234 Ill. App. 3d at 287. "Whether a duty exists is a question of law to be determined by the court, and depends on whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." Gouge v. Central Illinois Public Service Co., 144 Ill. 2d 535, 542 (1991). In the absence of a duty, no recovery by a plaintiff is possible as a matter of law. Rowe v. State Bank of Lombard, 125 Ill. 2d 203, 215 (1988).

It is well settled in Illinois that a landlord is not liable for injuries caused by a defective or dangerous condition on premises leased to a tenant and under the tenant's control. Klitzka v. Hellios, 348 Ill. App. 3d 594, 597 (2004). "Therefore, a lessor who relinquishes control of property to a lessee owes no duty to a third party who is injured while on the leased property." Klitzka, 348 Ill. App. 3d at 597. " 'The basic rationale for lessor immunity has been that the lease is a conveyance of property which ends the lessor's control over the premises, a prerequisite to the imposition of tort

liability.' " <u>Wright v. Mr. Quick, Inc.</u>, 109 Ill. 2d 236, 238 (1985), quoting R. Schoshinski, American Law of Landlord and Tenant §4.1, at 186 (1980). There are, however, several exceptions to the rule. <u>Klitzka</u>, 348 Ill. App. 3d at 598. A landlord may be liable where: "(1) a latent defect exists at the time of the leasing that the landlord should know about; (2) the landlord fraudulently conceals a dangerous condition; (3) the defect causing the harm amounts to a nuisance;" (4) the landlord has contracted by a covenant in the lease to keep the premises in repair (<u>Wright</u>, 109 Ill. 2d at 239); "(5) the landlord violates a statutory requirement of which a tenant is in the class designated to be protected by such requirement;" or (6) "the landlord voluntarily undertakes to render a service." <u>Klitzka</u>, 348 Ill. App. 3d at 598.

Plaintiff first argues that, under the lease, defendant assumed a duty to repair the premises and, thus, this case falls within an exception to lessor immunity.

Where a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant actually had a duty to act will be determined by the terms of the contract. <u>Perkaus v. Chicago Catholic High School Athletic League</u>, 140 Ill. App. 3d 127, 134 (1986). "[T]he defendant's duty will not be extended beyond the duties described in the contract." <u>Perkaus</u>, 140 Ill. App. 3d at 134.

Plaintiff cites several clauses of the lease that she contends created a duty to maintain the premises. Our review of the provisions reveals that they did not require defendant to maintain the property. The terms of the lease provide in pertinent part:

> "3. Tenant *** agrees, during the occupancy of said demised premises to maintain
>
> and keep the same in as good condition and repair as the same shall be upon taking
>
> possession

thereof, natural wear excepted ***.

4. *** Landlord shall have reasonable opportunity to inspect said premises, and do any repairing or other work thereon which he shall deem necessary for the preservation of the property.

* * *

18. No alterations or repairs may be performed in said apartment without landlord approval."

The lease agreement expressly addresses the question of responsibility for repairs and provides that the tenant is to "maintain and keep the [demised premises] in as good condition and repair as the same shall be upon taking possession." It is thus clear that the parties intended the duty of repair to rest on the tenants and not defendant. Wright, 109 Ill. 2d at 240; see, e.g., Bielarczyk v. Happy Press Lounge, Inc., 91 Ill. App. 3d 577, 580 (1980) (under the lease, lessee had the primary responsibility to keep the premises " 'in a clean, sightly and healthy condition, and in good repair' ").

Plaintiff also relies on the provision that states that "[n]o alterations or repairs may be performed in said apartment without landlord approval." Plaintiff's argument fails because there is no implied duty on a landlord to make repairs where the lease provision simply states that the lessee cannot make certain changes without obtaining the lessor's consent. See Cerniglia v. Farris, 160 Ill. App. 3d 568, 574 (1987); see also Yacoub v. Chicago Park District, 248 Ill. App. 3d 958, 961 (1993) (lessor's contractual right to approve any improvements made by lessee does not create a duty on the part of lessor). For example, in Rowe, 125 Ill. 2d at 220, a tenant argued that its landlord had control over its premises based on a lease provision that stated: " 'The Lessee will make no alterations in or

additions to said premises without first obtaining the Lessor's written consent.' " The court held that this provision did not establish that the landlord maintained control over the tenant's premises, as there was "nothing to suggest that if a request had been made, it would have been refused." Rowe, 125 Ill. 2d at 221. Here, the same is true. The agreement allowed for alterations and repairs with the landlord's approval, and plaintiff put forth no evidence that if the tenants had asked to repair the carpeting, defendant would have refused that request. Thus, this provision in the agreement does not establish that defendant had a duty to repair the premises.

Next, plaintiff relies on paragraph 4 of the lease, which states that the "[l]andlord shall have reasonable opportunity to inspect said premises, and do any repairing or other work thereon which he shall deem necessary for the preservation of the property." Although the lease reserves the landlord's "right to enter the apartment and to make any repairs he deems necessary, that, without more, does not impose on the landlord a duty to repair." Laster v. Chicago Housing Authority, 104 Ill. App. 3d 540, 544 (1982); see also Bielarczyk, 91 Ill. App. 3d at 580. A lease provision authorizing the landlord to enter the premises to make repairs does not require the landlord to do so. St. Mary's Hospital v. Auburn, 128 Ill. App. 3d 747, 749 (1984); see Hurt v. Pershing Mobile Home Sales, Inc., 83 Ill. App. 3d 724, 727 (1980) ("We do not agree with plaintiff's contention that the lease provision authorizing defendants to enter the premises to make repairs imposed a duty upon defendants to do so"). Virtually every landlord retains the right to enter the premises in order to make improvements and to prevent the tenant from doing the same on the leased premises. Yacoub, 248 Ill. App. 3d at 961. "These reservations in the lease do not, however, change the rule that it is the lessee, as the party in possession and control of the premises, who owes a duty to third parties

and can be liable for injuries from defective conditions on the premises." Yacoub, 248 Ill. App. 3d at 961.

Plaintiff's attempt to distinguish the above case law is unavailing. Plaintiff asserts that the lease provision here imposes a duty by stating that the landlord "shall" do any repairing. This is not an accurate description of the lease provision. Rather, the lease provides that the "[l]andlord shall have reasonable opportunity to inspect said premises, and do any repairing or other work thereon which he shall deem necessary for the preservation of the property." (Emphasis added.) Again, this provision simply reserves the landlord's right to enter the premises to perform repairs but does not obligate him to do so.

Lastly, plaintiff argues that defendant assumed a duty to properly maintain the premises, based on his course of conduct in making all necessary repairs. Plaintiff relies on Jones v. Chicago Housing Authority, 59 Ill. App. 3d 138 (1978), and Jordan v. Savage, 88 Ill. App. 2d 251 (1967), for this proposition. In Jones, the evidence showed that the housing authority had the practice of consistently making repairs to the tenant's premises upon the tenant's request. Jones, 59 Ill. App. 3d at 140. When the housing authority failed to repair a window latch at the tenant's request, the housing authority was held liable for injuries sustained by the tenant's child who fell through the window. The court noted that a landlord's course of conduct "may establish a duty to properly maintain the premises in which plaintiff resided." Jones, 59 Ill. App. 3d at 140.

However, Jones does not apply when there is an express agreement between the parties governing maintenance of the property. Hurt, 83 Ill. App. 3d at 727. In Hurt, the court specifically noted that in Jones there was no evidence of any express agreement as to who was required to make repairs. Hurt, 83 Ill. App. 3d at 727. Thus, the court interpreted the rationale of Jones to be that, "in

the absence of a showing of an express binding agreement as to who was to make repairs, the course of dealing of the parties may imply the existence of an agreement imposing that duty." Hurt, 83 Ill. App. 3d at 727. Because, here, there was an express agreement that provided that the tenants were responsible for maintaining the premises in good condition, Jones does not apply.

In any event, the evidence contradicts plaintiff's argument. There was no evidence, whatsoever, of any specific repairs defendant performed. Rather, plaintiff relies on defendant's testimony that, in general, he was responsible for receiving phone calls regarding problems and that if he had noticed that the stairs were unsafe, he would have repaired them. This, however, does not establish a practice of making repairs to the premises. See McCoy v. Chicago Housing Authority, 333 Ill. App. 3d 305, 312 (2002) (court distinguished Jones and found no duty where the evidence showed that workmen came only once to repair tenant's apartment and landlord repeatedly failed to fulfill promises that it would make repairs). Moreover, the evidence showed that the tenants, themselves, and not defendant, made repairs to the stairs and handrail. "Thus, there is no basis from which a court could infer that [defendant] had made a practice of making repairs" to the premises. McCoy, 333 Ill. App. 3d at 312.

Likewise, Jordan is distinguishable from this case. In Jordan, the landlord voluntarily undertook to make repairs and did so negligently. Jordan, 88 Ill. App. 2d at 260-61. The holding in that case "was merely an application of the general rule that liability can arise from negligence in performance of a voluntary undertaking." St. Mary's Hospital, 128 Ill. App. 3d at 750 (explaining Jordan). Because there is no allegation that defendant negligently performed repairs to the stairs, plaintiff's argument fails.

In sum, because there is no basis on which defendant could be held liable for plaintiff's injuries, there is no genuine issue of material fact, and defendant was entitled to judgment as a matter of law. Therefore, we affirm the dismissal of plaintiff's amended complaint.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.