# Illinois Official Reports

## Appellate Court

---

*Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727

---

| | |
|---|---|
| Appellate Court Caption | GHADA HANNA, Plaintiff-Appellant, v. CREATIVE DESIGNERS, INC.; LUTHERAN HOME FOR THE AGED; KEN BRUCE; and EVANGELICAL LUTHERAN ALTENHEIN GENSELOSCHAFT VON CHICAGO, Defendants (Creative Designers, Inc., Defendant-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-3727 |
| Rule 23 order filed | May 26, 2016 |
| Rule 23 order withdrawn | August 11, 2016 |
| Opinion filed | September 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-12602; the Hon. Kathy Flanagan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David J.E. Roe, of Mt. Prospect, for appellant.<br><br>Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke, of counsel), for appellee. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    In February 2013, plaintiff Ghada Hanna filed her amended complaint for premises liability against defendants Creative Designers, Inc. (Creative Designers), Lutheran Home for the Aged (Lutheran Home), Ken Bruce, and Evangelical Lutheran Altenhein Genseloschaft Von Chicago, alleging negligence to properly own, manage, maintain, and control the premises, specifically a shelf, which fell and injured plaintiff on December 16, 2010. Creative Designers and Bruce filed a motion for summary judgment, and the Lutheran Home filed a separate motion for summary judgment. Following briefing, the trial court granted both motions for summary judgment.

¶ 2    Plaintiff appeals the trial court's grant of summary judgment in favor of Creative Designers but does not challenge summary judgment in favor of the other defendants. On appeal, plaintiff argues that the trial court erred in (1) determining that a tenant/lessee is not liable for a defective and/or dangerous condition on the premises the tenant/lessee controls; (2) determining that when a landlord is responsible for repair on a property, the tenant/lessee is relieved of control of the property for any unsafe conditions; and (3) granting summary judgment in favor of Creative Designers when a genuine issue of material fact existed.

¶ 3    In November 2012, plaintiff filed her initial complaint for premises liability against the defendants. In February 2013, plaintiff filed an amended four count complaint for premises liability, with identical counts raised against each of the four defendants. In her complaint, plaintiff alleged that on December 16, 2010, she was lawfully on the premises of 1250 Village Drive, Arlington Heights, Illinois, when she was "struck violently on her head and/or neck due to the dangerous and unsafe conditions *to wit*, a falling, unsecured shelf, located on the aforesaid premises." According to the complaint, Creative Designers owned, managed, maintained, and controlled the premises and had a duty to properly secure the shelf with reasonable care and caution so that those lawfully upon said premises would not be injured. Notwithstanding this duty, Creative Designers breached its duty by carelessly and negligently (1) managing, maintaining, and controlling the premises to allow an unsecured and/or defective shelf to remain and fall on plaintiff; (2) permitting the premises to become an unreasonably dangerous condition by failing to secure the shelf; (3) failing to warn plaintiff of the dangerous and defective conditions of the premises, including the shelf; (4) allowing the premises to remain in an unsafe and dangerous condition although Creative Designers knew or should have known of the defective and dangerous conditions; and (5) failing to make any inspections of the premises although Creative Designers knew or in the exercise of ordinary care should have known the premises should have been inspected. As a direct and proximate cause of one or more acts of negligence by Creative Designers, plaintiff sustained severe and lasting injuries. The complaint repeated these allegations for each count against the other defendants.

¶ 4    After discovery, including depositions, interrogatories and other filings, the facts of the case are as follows. Creative Designers is an Illinois corporation engaged in the business of cosmetology. Ken Bruce is the president of Creative Designers and operates the salon.

Pursuant to a lease agreement between Creative Designers and Luther Village Owners Corporation (Luther Village), Creative Designers agreed to operate a salon in a designated space in the Luther Village Retirement Community, located in the Wittenberg Commons, 1250 Village Drive in Arlington Heights. The salon was primarily to serve residents of the community. According to the lease, Luther Village purchased and installed all fixtures in the salon, and the fixtures remained the property of Luther Village throughout the lease term. Luther Village was responsible for repairs of any damage to the fixtures resulting from defects in the material, workmanship, or normal wear and tear. Luther Village was also responsible for any repairs caused by negligence on the part of Creative Designers or its employees, but said repairs were to be paid by Creative Designers. Under the lease, Creative Designers were to permit Luther Village's employees to clean the premises.

¶ 5 In 1993, Bruce was contacted by an administrator from Luther Village to inquire if he was interested in operating a salon at the community. Bruce signed a lease in January 1994 to operate the salon at that location. He operated as a sole proprietor until Creative Designers was formed in 1996. His wife, Shirley Bruce, has acted as the day-to-day manager of the salon since 1994. Creative Designers employs stylists as independent contractors at the salon. Each independent contractor has a one-year contract, which can be renewed annually. Plaintiff was hired as an independent contractor in 2008.

¶ 6 In July 2008, Luther Village renovated the salon. The new fixtures, including shampoo bowls, countertops, work stations, and necessary equipment were selected and installed by Luther Village. Bruce and the stylists were consulted and shown samples of the textures for the walls and floors as well as photographs of the fixtures with the recommendations of Luther Village, and Bruce accepted the recommendations. Creative Designers did not contribute to the cost of the renovation. Bruce testified at his deposition that Luther Village was responsible for cleaning and maintenance of the salon since the inception of the lease. It was his understanding that the Luther Village maintenance staff performed regular inspections of the fixtures in the salon, including the flip-top countertops. At some point after installation, a request was made to cut the depth by a couple inches because the countertops were too deep for the workstation. Shirley testified at her deposition that plaintiff had never made any complaints to her regarding the countertops. She was not aware of maintenance finding any problems with the countertops.

¶ 7 In their depositions, Shirley, Sally Doti, another independent contract stylist at Creative Designers, and William Scherdin, director of the Luther Village maintenance department at the time of the incident, described the use of the flip-top countertops. The countertops were attached by a spring lever and could be lifted and locked into an upright position to access the shampoo bowl and some storage space. When the countertop was lifted, a lock would catch and one would hear an audible click sound to know the countertop was secured in the upright position. To release the countertop, one needed to push a lever to release the lock with one hand, while lowering the countertop with the other hand. There was an audible click upon release as well. Scherdin stated that the maintenance department inspected the countertops on a quarterly basis as part of a routine inspection of the salon. The inspection included checking the hinges, ensuring the screws were tight, and confirming the locking mechanism was operational. No repairs had been required. Scherdin said that he had not received any complaints about the countertops. Doti stated that she had never had a problem with the

countertops nor a situation in which the countertop did not lock properly into an upright position.

¶ 8     In contrast, plaintiff testified at her deposition that there was no sound made when the countertop locked into the upright position. She also stated that to bring the countertop down, she would push it toward the mirror, further forward, to release the lock and then lower it. She denied that she had to push a lever to release the lock. She testified that the screws on the countertop at her station had come loose in the past which was reported to Bruce, Shirley, or maintenance, but she was unable to specify when this had occurred prior to the day of the incident.

¶ 9     In November 2010, Bruce decided to terminate plaintiff's independent contract, and she was given 30-days notice with plaintiff's last day to be December 31, 2010. The termination was based on customer complaints and plaintiff's objection to giving manicures to customers. Around December 15, 2010, Bruce had an encounter with plaintiff's daughter, which resulted in Bruce terminating plaintiff's employment at the end of business on December 16.

¶ 10    On December 16, 2010, plaintiff lifted and locked the countertop without incident at least six or seven times throughout the day. Toward the end of business, plaintiff was closing her station. She testified that she lifted the countertop to put shampoo and a comb sterilizer into storage. She did not hear a click indicating that the countertop was locked in the upright position. Immediately after she lifted the countertop, she stated that it fell, striking her on the back of the head, neck, and shoulder, and she was injured.

¶ 11    Shirley, Doti, and Jane Dirks, another independent contract stylist, were working at the time of the incident. Shirley testified that she was in the restroom outside of the salon at the time of the incident. Doti testified that she was at her station at the time of the incident. She said that prior to the incident, plaintiff had been cashing out her station and counting money. Doti turned to her station but a couple minutes later heard plaintiff say, "ow." Doti turned around and saw the countertop on plaintiff's right shoulder. She did not see the countertop fall. Doti stated that she did not hear the locking mechanism click prior to the incident. In a statement, Dirks said she worked at the station next to plaintiff. She observed plaintiff doing bookwork and counting her money on top of her station. Dirks had her back to plaintiff and continued to work on a customer. Shortly thereafter, she heard a cry from plaintiff and saw plaintiff leaning into the sink with the countertop leaning on plaintiff. Dirks went and notified Shirley. Dirks stated that she did not hear the countertop click into place nor did she hear a "thunk" when the countertop would have struck plaintiff. Dirks said that she had never seen the countertops fall, and if the screws were loose, you would have them checked.

¶ 12    Following the incident, Shirley summoned the Luther Village nurse to check plaintiff. The paramedics were called as part of protocol. Plaintiff declined treatment, stating that she would see her own doctor. Scherdin was informed of the incident. He and another member of the maintenance department went to inspect plaintiff's workstation that day. Scherdin testified that his inspection found no issues with the locking mechanism, and the screws were tight. He lifted the countertop to a locked position and lowered it without issue. In his opinion, it was operator error that caused the incident.

¶ 13    In January 2011, plaintiff sent Creative Designers a letter notifying it of the injury she sustained on December 16, 2010, pursuant to the Worker's Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)). In the letter, she stated that she was injured "when attempting to

lower the hinged countertop by the shampoo bowls. The countertop fell, hitting [her] shoulders, neck and head."

¶ 14    In July 2014, Creative Designers and Bruce filed a motion for summary judgment, arguing that they did not have an ownership interest in the premises where the salon was located nor did they have an ownership interest in the fixtures in the salon. Both the premises and the fixtures were owned by Luther Village. Further, Luther Village maintained the fixtures and undertook the responsibility for inspections of the salon and its fixtures. Accordingly, they were not liable for the alleged defect. Additionally, they argued that there was no evidence that they had notice of any defect in the countertop, as plaintiff raised and lowered it multiple times that day without incident. Also, the inspection by the Luther Village maintenance department disclosed no issues and the countertop was in working order.

¶ 15    In response, plaintiff argued that there was a question of material fact as to whether (1) negligent management of the salon by Creative Designers and Bruce caused the dangerous condition, (2) the countertops were an unsafe condition on the premises, and (3) holiday decorations prevented the countertops from operating properly.

¶ 16    In October 2014, the trial court granted the motion for summary judgment filed by Creative Designers and Bruce. The court found that Creative Designers was a tenant in possession of the salon, but under the lease agreement, Luther Village as the landlord handled the cleaning, inspection, repair, and maintenance responsibilities for the salon. "Thus, even if the counter top was defective or loose, the [Luther Village] maintenance department was responsible for repair and any question of notice of a problem would be as to Luther Village and not to Ken Bruce." The court further found that even if plaintiff previously reported loose screws, she has not shown that this condition existed on the day of the incident. The court found any contention related to holiday decorations to be "speculative and not supported by the evidence."

¶ 17    This appeal followed. Plaintiff does not challenge the grant of summary judgment as to Bruce personally.

¶ 18    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 19    "In order to recover in an action for negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury to the plaintiff proximately caused by the breach." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). "The question of the existence of a duty is a question of law, and in determining whether a duty exists, the trial court considers whether a relationship existed between the parties that imposed a legal obligation upon one party for the benefit of the other party." *Sameer*, 343 Ill. App. 3d at 85. "In considering whether a duty exists in a particular case, a court must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden." *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). "Where no duty exists, the plaintiff cannot recover." *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 40 (2004).

¶ 20    Section 343 sets forth the circumstances under which "[a] possessor of land is subject to liability for physical harm" to persons on his land. Restatement (Second) of Torts § 343 (1965). Section 343 states:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343, at 215-16 (1965).

See also *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 478 (1976).

¶ 21    "The term 'possessor' with respect to possession of land is defined in the Restatement as 'a person who is in occupation of the land with intent to control it.' " *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 375 (2009) (quoting Restatement (Second) of Torts § 328E, at 170 (1965)). "The two requirements under that subsection are occupation and intent to control the land, as opposed to the activities or individuals thereon." *O'Connell v. Turner Construction Co.*, 409 Ill. App. 3d 819, 824 (2011). "The concept of 'control' is closely tied with the ability to exclude people from the use of a piece of property or to direct how that property is to be used." *Williams v. Sebert Landscape Co.*, 407 Ill. App. 3d 753, 756 (2011).

¶ 22    "Only the party in control of the premises can be held liable for a defective or dangerous condition on the premises." *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d) 110943, ¶ 38.

> " 'It is axiomatic that if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. [Citations.] Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control.' " (Emphasis omitted.) *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 413 (1991) (quoting *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220-21 (1988)).

¶ 23    Generally, "a landlord is not liable for injuries caused by a defective or dangerous condition on premises leased to a tenant and under the tenant's control." *Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275 (2007). However, there are exceptions, including that "a lessor may be liable (1) where the lessor has expressly agreed to keep the premises or parts of it in good repair; or (2) where the lessor has voluntarily assumed the maintenance obligation by its conduct." *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009) (citing *O'Rourke v. Oehler*, 187 Ill. App. 3d 572, 580 (1989)). "Only the party in control of the premises can be held liable for a defective or dangerous condition on the premises." *Hilgart*, 2012 IL App (2d) 110943, ¶ 38.

¶ 24    Further, "[w]here a defendant is charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant actually had a duty to act will be determined by the terms of the contract." *Gilley*, 372 Ill. App. 3d at 275. " '[T]he defendant's duty will not be extended beyond the duties described in the contract.' " *Id.* (quoting *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1986)).

¶ 25 Plaintiff argues that Creative Designers possessed and was in control of the premises and, thus, had a duty to maintain the premises in a safe condition to ensure that invitees would not be injured. To find such a duty, plaintiff points to language in the lease stating, "Tenant shall maintain the Premises in as good condition as when Tenant took possession." Plaintiff relies on the Second District decision in *Gilley* for support.

¶ 26 In that case, the plaintiff was the girlfriend of the tenant. She fell down stairs located within the tenant's apartment and filed suit against the landlord. The trial court granted the landlord's motion to dismiss the complaint. *Gilley*, 372 Ill. App. 3d at 272-73. On appeal, the reviewing court rejected the plaintiff's argument that the landlord retained control over the premises because the lease agreement gave the landlord the right to enter the property to make repairs. *Id.* at 275-76. The court held that such a provision, without more, is not sufficient to impose a duty on the landlord and give him control over the premises while the tenant has possession under the lease. *Id.* at 276-77. The court found the lease provision requiring the tenant to maintain and keep the premises in good repair makes the tenant responsible for any injuries to invitees. *Id.* at 276.

¶ 27 In response, Creative Designers contends that simply occupying the premises did not amount to possession, nor did they have control over the premises. Creative Designers relies on the decision in *O'Connell*. In that case, an employee of a subcontractor hired by an independent contractor brought a negligence suit against the construction manager for a school district's building project following an injury he received while at work arguing, in relevant part, that the construction manager owed him a duty under section 343 of the Restatement (Second) of Torts. The trial court granted summary judgment in favor of the construction manager. *O'Connell*, 409 Ill. App. 3d at 820-22.

¶ 28 On appeal, the reviewing court found that there was no evidence to show a question of material fact that the construction manager possessed the land as intended by section 343 and affirmed the grant of summary judgment. *Id.* at 824-26. "There is no allegation, for example, that [the construction manager] could exclude anyone from the premises or that it could even alter what was built where, all of which could denote dominion over the construction site." *Id.* at 825. Plaintiff alleged that the construction manager that had general responsibility for safety on the project and coordination of the contractors and activities on the construction site, the court found that the plaintiff failed to show that this authority amounted to a right or intent to control the premises. *Id.* at 825-26.

¶ 29 Creative Designers contend that as in *O'Connell*, its control of people and activities on the premises does not equate to control and dominion of the land itself. Unlike the lease in *Gilley*, Creative Designers notes that the lease agreement with Luther Village contained specific provisions entitling Luther Village to retain control. First, the lease for the space was not for the tenant to use as it wanted and was limited only to what was provided in the lease. The lease specifically stated that the tenant's business and permitted use was "retail beauty salon and barber shop serving primarily residents of Luther Village." The lease also provided that Luther Village was responsible for housekeeping and maintenance of the premises. Significantly, the lease stated:

> "Tenant acknowledges that Landlord has purchased and installed all furniture and fixtures (including trade fixtures) located in the Premises as of the date hereof. Said furniture and fixtures shall remain the property of Landlord throughout the Term of the Lease. Landlord agrees to repair any damages to Landlord's furniture and fixtures

resulting from defects in material or workmanship or caused by normal 'wear and tear'. Any damage to Landlord's furniture or fixtures caused by negligence of Tenant or Tenant's employees, agents or contractors shall be repaired by Landlord and paid for by Tenant. All such repair costs shall be paid by Tenant within thirty (30) days following the receipt of an invoice. Notwithstanding Section 13 of the Lease, any furniture or fixtures installed by Tenant shall remain Tenant's property and shall be properly maintained by Tenant, at Tenant's cost."

¶ 30    This lease term expressly provides that Luther Village has undertaken control over the maintenance and care of the fixtures in the salon, which included the flip-top countertops. The evidence showed that Luther Village renovated the salon space in 2008. The workstations, including the flip-top countertops, were selected and paid for by Luther Village. While plaintiff asserts that the selection was a joint effort between Luther Village and Creative Designers, Bruce testified that Luther Village showed him their selections and he offered no objection. Plaintiff thus contends that Creative Designers had control because its president, Bruce, "accepted what fixtures would be put into the salon." Plaintiff has not cited any authority that a consultation over selection of fixtures would amount to control where the language of the lease dictates that the landlord retains control, through ownership, and repairs of the fixtures.

¶ 31    Creative Designers did not own nor did they have control over the repair and maintenance of the countertops. Under the lease, Luther Village, as the lessor, undertook a duty to maintain and control the fixtures in the premises. The evidence showed that Luther Village's maintenance department routinely inspected the fixtures in the salon, including the countertops. We are not persuaded by plaintiff's contention that Creative Designers shared control because the stylists or Shirley reported issues to Luther Village maintenance. Under the lease, the sole entity responsible for any repairs was Luther Village.

¶ 32    Luther Village owned the salon, and Creative Designers leased the use of the salon as its business and had no ownership interest in the salon under the lease. It is clear that Creative Designers and Luther Village intended that the duty of repair rest solely on Luther Village. Absent control over the premises, Creative Designers did not owe a duty to plaintiff as a matter of law and was entitled to immunity. See *Hilgart*, 2012 IL App (2d) 110943, ¶ 38 ("Only the party in control of the premises can be held liable for a defective or dangerous condition on the premises."). Luther Village expressly agreed that the fixtures were its property and agreed to repair *any* damages to those fixtures "resulting from defects in material or workmanship or caused by normal 'wear and tear.' " Since plaintiff has not shown a question of material fact as to whether Creative Designers owed her a duty of care, summary judgment was proper.

¶ 33    Further, even if we found a duty of care by Creative Designers, plaintiff has not shown that Creative Designers had reasonable notice of a dangerous condition on the premises. Although the trial court did not primarily consider notice as a basis in its decision, we may affirm on any basis in the record on appeal. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007).

¶ 34    Under section 343 of the Restatement, "there is no liability for landowners for dangerous or defective conditions on the premises in the absence of the landowner's actual or constructive knowledge." *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000). First, there is no evidence, nor any argument by plaintiff, that Creative Designers had actual notice of any current defect in plaintiff's countertop.

¶ 35    "To prove constructive notice, a plaintiff must show that the hazardous condition existed for a sufficient amount of time or that, through the exercise of reasonable care, the defendant should have discovered the dangerous condition." *Hornacek v. 5th Avenue Property Management*, 2011 IL App (1st) 103502, ¶ 29. As to constructive notice, plaintiff asserts that Creative Designers had constructive notice because it "knew that the screws would get loose on the countertop and knew that the hairstylists lifted and lowered the counter at least a dozen times a day." However, even if we presume plaintiff's description of the incident was accurate, plaintiff has offered no evidence to show a connection between a prior report of loose screws such that Creative Designers had constructive notice that the countertop at plaintiff's station was defective at the time of the incident in that it would not remain secured in an upright position. Plaintiff testified at her deposition that she lifted the countertops at least six to seven times that day without noticing any problems or defects. Nothing in the depositions or other evidence in the record show that a hazardous condition existed for a period of time or that Creative Designers would have discovered the defect through reasonable care. Since Creative Designers did not have constructive notice of any defect in the countertops, plaintiff has not shown a question of material fact. Therefore, summary judgment was proper on this alternative basis.

¶ 36    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 37    Affirmed.