Sixth Division
November 12, 2010

No. 1-09-1710

| | | |
|---|---|---|
| MARLA BETH TORF, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff–Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | 08 L 001086 |
| CHICAGO TRANSIT AUTHORITY, a Municipal | ) | |
| Corporation, | ) | |
| | ) | Hon. Kathy M. Flanagan, |
| Defendant–Appellee. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, Marla Beth Torf, was injured while attempting to evacuate a Chicago Transit Authority (CTA) train and brought an action against the CTA seeking to recover damages for negligence. The trial court granted summary judgment in favor of the CTA, finding that it was immune from liability under the Metropolitan Transit Authority Act (the Act) (70 ILCS 3605/27 (West 2008)). For the reasons that follow, we reverse.

The complaint alleged that on July 7, 2007, Torf and her husband boarded a CTA train at the Cermak-Chinatown station. Shortly after the train left the station, it was stopped on the tracks and its power was turned off. The passengers on the train were subsequently ordered to evacuate. Torf attempted to evacuate the train to the tracks below by first trying to sit on the floor next to the train's door. While doing so, Torf was knocked to the floor by another passenger and was injured. Torf alleged that the CTA owed a duty to exercise the highest degree of care to protect the safety of its passengers and that it breached that duty and was negligent by: (1) failing to maintain the train so as to avoid disruption of service between platforms; (2) failing to provide a safe means of egress for Torf to exit the train once the evacuation was ordered; (3)

failing to provide clear instructions dictating the safe evacuation of the train so as to avoid chaos; and (4) failing to provide assistance to Torf and other passengers as they exited the train to track level so as to minimize the risk of injury.

The CTA filed a motion for summary judgment, arguing that Torf's discovery deposition established that her injuries were caused by criminal assault and that the complaint essentially alleged that the CTA failed to protect Torf from the criminal act of a third party. As such, the CTA argued that it was immune from liability under section 27 of the Act. In relevant part, that section states:

> "Neither the Authority, the members of its Board, nor its officers or
> employees shall be held liable for failure to provide a security or
> police force or, if a security or police force is provided, for failure
> to provide adequate police protection or security, failure to prevent
> the commission of crimes by fellow passengers or other third
> persons or for the failure to apprehend criminals." 70 ILCS
> 3605/27 (West 2008).

The CTA attached Torf's discovery deposition to its motion for summary judgment. In that deposition, Torf testified that the train was approximately 100 to 200 feet from the station when its power was turned off. When the power to the train was cut, at approximately 8 p.m., the lighting and air conditioning on the train also stopped. An announcement on the train indicated that there was an emergency on the tracks and that anyone attempting to leave the train would be arrested. Torf testified that the outside temperature at the time was in the "high-80's,

low-90's" and that the inside of the car felt "like an oven" because the train's doors and windows were closed. Approximately 40 minutes after the train was stopped, a CTA employee came through Torf's car and opened the doors and windows. Some time later, Torf saw police apprehend the person threatening to commit suicide and an announcement was then made that the train would be evacuated shortly. Someone then came through the train and closed the doors and windows.

Approximately 10 minutes later, and 1½ hours after the train initially came to a stop on the tracks, an announcement was made that the passengers in Torf's car should evacuate the train by exiting the doors. Torf testified that there were no CTA employees in her car to help passengers evacuate and that no announcement was made as to whether power was running through the tracks. Instead, one of the passengers in Torf's car opened the doors and the passengers evacuated the train by either jumping from the car to the gravel beside the tracks below or by sitting down on the edge of the car and then jumping from the train. Torf explained that there was a significant drop from the train's floor to the gravel below.

Torf waited until all the other passengers in her car had left the train before she attempted to evacuate because she knew that she would be slow due to a problem with her knee. Torf attempted to evacuate by sitting down at the exit door of the car in order to lower herself down more gradually. As Torf was attempting to sit down, someone "pushed down on [her] shoulders" and moved his body around her and then jumped off the train. Torf also described this person as having used her as a "springboard" to jump off the train. The push from this person forced Torf into a sitting position and she used her hands to break her fall. Another person then put his or her

hands on Torf's back and "pushed" her from behind, causing Torf to fall off the train. Torf was looking the other way at the time and so she did not see this person push her. Torf's fall was broken when someone outside of the train caught her and lowered her onto the gravel. The person that caught her was not in uniform and Torf believed this person was a "passerby." When she was outside of the train, Torf saw people in uniform at the car behind her lifting somebody in a wheelchair. Torf was then joined by her husband and they walked with the other passengers to the platform. Torf had to climb four or five stairs to get to the platform and hurt her hand while doing so. As a result of the incident, Torf experienced pain in her lower back, hip, and hands. Torf lost some functionality in her right hand and missed approximately two weeks of work.

Angel Negron, a transportation manager for the CTA, testified in his discovery deposition that the Chicago fire department made the decision to evacuate the train and he estimated that the distance between the threshold of the floor of each train car to the tracks level was five feet. He also testified that there is a ladder affixed to the side of each car by the door, but that in order to use the ladder a person would have to reach outside the train and grab the handle to the ladder, "swing their way out," and step down onto the ladder. Negron also testified as to CTA policies and procedures for evacuating a train but he did not know if the CTA had employees at each car helping people evacuate and he did not witness Torf's fall from the train.

In his discovery deposition, Torf's husband testified to substantially the same sequence of events as did Torf. He did not witness the contact between Torf and the two passengers, nor did he see how Torf exited the train.

1-09-1710

In response to defendant's motion for summary judgment, Torf argued that the basis for her complaint was not that the CTA failed to protect her from the criminal acts of a third party. Rather, her complaint alleged that the CTA was negligent in that it failed to properly conduct the evacuation of the train. Torf also responded that there were no facts establishing the requisite criminal intent of the third-party actors who pushed her and that a reasonable inference from the evidence was that the actions of these third parties were the result of panic caused by the CTA's negligent handling of the evacuation.

Following a hearing, the circuit court granted defendant's motion for summary judgment. The court stated that Torf was pushed off a train and that this constituted a battery that brought her claim within the scope of the immunity afforded to the CTA by the Act. The court noted that Torf attempted to distinguish her claim so as to remove it from the Act by alleging that the CTA was negligent in the way it evacuated the train, but the court found that "in the end it comes down to a failure to prevent a criminal attack." The court therefore found that defendant was entitled to summary judgment based upon the immunity it was given under section 27 of the Act. This appeal followed.

Torf contends that summary judgment was improper because the allegations in her complaint fall outside the scope of the Act and because a question of fact exists as to whether criminal conduct caused her injuries.

Summary judgment is "a drastic measure [of disposing of litigation] and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "The purpose of summary judgment

-5-

is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008); see also *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 212 (2007).

In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings and evidentiary material in the record strictly against the movant and liberally in favor of the nonmoving party. *American States Insurance Co. v. Hamer*, 352 Ill. App. 3d 521, 525 (2004). A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Williams*, 228 Ill. 2d at 417; *In re Estate of Ciesiolkiewicz*, 243 Ill. App. 3d 506, 510 (1993); see also *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995) ("[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact"). The circuit court's decision to grant or deny a motion for summary judgment is reviewed *de novo*. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 470-71 (2001).

We first consider Torf's contention that summary judgment was improper because a question of material fact exists as to whether her injuries were caused by criminal conduct. In

granting summary judgment in favor of defendant, the circuit court noted Torf's allegations that the CTA was negligent in evacuating the train but stated that the "crux of the complaint" was "a failure to prevent a criminal attack." However, when a court considers a motion for summary judgment, the pleadings must be construed strictly against the movant and liberally in favor of the nonmoving party. *Hamer*, 352 Ill. App. 3d at 525. Viewed under this standard, Torf's complaint was clearly and solely directed at defendant's alleged negligence in failing to provide a safe and clear means for passengers to evacuate the train so as to avoid the risk of injury to passengers resulting from a chaotic and disorderly evacuation. In her complaint, Torf alleged that defendant owed a duty to exercise the highest degree of care in operating the train and she enumerated four ways by which defendant breached that duty. Specifically, defendant failed to maintain the train so as to avoid discontinuation of service between platforms, failed to provide a safe means of egress for passengers to evacuate the train, failed to provide "clear instructions dictating the safe evacuation of the CTA Train so as to avoid chaos," and failed to provide assistance to passengers evacuating the train so as to minimize their risk of injury. Torf made no mention in her complaint of an alleged failure by the CTA to prevent a third-party "criminal attack" on one of its passengers and she did not characterize the push she received by either of the unknown third parties as a "battery." There is nothing in the substance of Torf's complaint that could be construed to assert liability on the part of the CTA based upon its failure to prevent a criminal attack on Torf.

Moreover, in granting summary judgment, the circuit court concluded as a matter of law that the "push" Torf received from one or both of the unknown persons was a "battery." "A

person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 2008). Intent is an essential element of the offense of battery. *People v. Phillips*, 392 Ill. App. 3d 243, 258 (2009). Although there appears to be disagreement as to whether battery is a specific or general intent crime, an essential element of the crime is that the conduct of the person who is alleged to have committed a battery must have been knowing or intentional, and not accidental. See *Phillips*, 392 Ill. App. 3d at 258 (noting the disagreement as to whether battery is a specific or general intent crime). A person acts with knowledge of the result of his conduct "when he is consciously aware that such result is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2008).

In this case, we conclude that when viewed in the light most favorable to plaintiff, there is insufficient evidence in the record to determine as a matter of law the mental state of either person who made contact with plaintiff. With respect to the first individual, Torf testified that she waited until all the passengers on her car had left the train before she attempted to evacuate. As she was sitting down on the train floor, the first individual pushed down on Torf's shoulders and maneuvered his body around her in order to jump off the train. This was the only testimony concerning this person's actions and it is insufficient to permit a legal conclusion that his actions were intentional or knowing. Torf did not testify that she saw this individual approach her from behind and there was no such testimony from any other witness as to the circumstances leading to this person's contact with plaintiff. Moreover, reasonable minds could draw competing inferences from the evidence that is contained in the record. That evidence, viewed in the light

most favorable to plaintiff, established that the situation in the train was chaotic. The passengers had been waiting in the train for over an hour and Torf described the temperature in the train as "like an oven." She also testified that the lights were turned off in her train car, that there were no CTA employees in the car to help with the evacuation, and that some people were evacuating by jumping out of the car while others did so by first sitting down on the car floor and then jumping to the gravel below. Under these circumstances, a reasonable person could infer that the contact made by the first person was simply incidental to this person evacuating the train or that this person was pushed into plaintiff by other evacuating passengers, which would indicate accidental contact and would negate a finding of intentional or knowing conduct. Because of the lack of evidence in the record and the inferences that could be drawn from the evidence, we conclude that a question of material fact remains as to the state of mind of the first person who made contact with Torf. Accordingly, the circuit court's legal determination that this person's conduct constituted a battery was error.

We also conclude that a question of material fact remains as to whether the contact made by this first person caused Torf's fall from the train and her subsequent injuries. Torf testified that the first contact forced her into a sitting position on the train floor. Torf further testified that as she was in this sitting position, another person put his or her hands on Torf's back and pushed her from behind, causing Torf to fall off the train. The circuit court stated that "plaintiff was pushed off the train by another passenger" and that "the pushing complained of here is a battery." However, given the testimony described above when viewed in the light most favorable to Torf, a reasonable person could conclude that it was the contact made by the second person which

caused Torf to be ejected from the train and to suffer injuries. Therefore, even if the conduct of the first person could legally be considered a battery, summary judgment would be proper only if the contact made by the second person was properly determined as a matter of law to also have been a battery.

However, for the same reasons discussed above, there is insufficient evidence in the record to conclude as a matter of law that the contact made by this second person was a battery. There is less testimony as to the circumstances surrounding this contact than was offered regarding the first person who made contact with Torf. Torf testified that she was looking the other way and that she did not see this second person push her from behind. There was no other testimony from Torf or any other witness regarding the contact made by this person. Again, given the circumstances of the evacuation, Torf's limited testimony is insufficient to determine the mental state of this second individual as a matter of law. Accordingly, drawing all reasonable inferences in favor of plaintiff, we cannot conclude as a matter of law that this person intentionally or knowingly made contact with Torf.

We find support for this conclusion in *Zboralski v. Monahan*, 616 F. Supp. 2d 792, 803 (N.D. Ill. 2008). In that case, the plaintiff alleged a battery under Illinois law arising from alleged touching of her vaginal area by the defendant during a pat-down search at a mental health treatment center. The defendant filed a motion for summary judgment, arguing that any touching was incidental to the lawful pat-down. The court stated that this argument turned on the defendant's mental state at the time, "an issue in dispute and one which is more appropriately suited for the trier of fact." *Zboralski*, 616 F. Supp. 2d at 803. The court also noted that the

plaintiff disagreed with the defendant's version of events, that the facts must be viewed in the light most favorable to the plaintiff, and that under those circumstances summary judgment was inappropriate. *Zboralski*, 616 F. Supp. 2d at 803-04.

Although the decision in *Zboralski* is not binding on this court, it illustrates the difficultly in determining whether a person acted with the mental state required for the crime of battery on a motion for summary judgment. In this case, unlike in *Zboralski*, the problem is not primarily that there is conflicting evidence as to the state of mind of the person alleged or found to have committed a battery. Rather, the problem is that there is insufficient evidence as to the state of mind of the individuals who made contact with plaintiff so as to permit a legal determination that they acted with the mental state required for the crime of battery. In the absence of such testimony, we conclude that it was improper to determine as a matter of law that the contact either of these individuals made with plaintiff was a battery. Accordingly, entry of summary judgment was improper.

The parties also dispute whether plaintiff's claim falls within the immunity afforded to the CTA by the Act. In claiming that it is immunized from liability by the Act, the CTA relies upon our supreme court's decisions in *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230 (1988) and *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527 (1994). In *Bilyk*, 125 Ill. 2d at 233-34, our supreme court upheld the constitutionality of section 27 of the Act and acknowledged that it "immunizes the CTA from tort liability for any failure to protect passengers from criminal acts of third parties." Subsequently, in *Eagan*, 158 Ill. 2d at 530, the court considered whether a complaint filed against the CTA was properly dismissed by the circuit court on the ground that

the claims asserted therein were barred by the immunity granted to the CTA in section 27 of the Act. The plaintiff's complaint alleged while he was a passenger on a CTA train, he was injured by an individual attempting to pick the pocket of another passenger. The complaint further alleged that the CTA was aware of prior instances of pickpocketing, that it had a duty to take "'some form of preventative measure,'" and that it breached that duty by failing to monitor the train and respond when the pickpocketing was observed. *Eagan*, 158 Ill. 2d at 529. In considering the propriety of that dismissal, the supreme court stated that section 27 of the Act granted the CTA immunity from liability under the following circumstances:

> "(1) failure to provide a security or police force; or (2) if a security
> or police force is provided, (a) failure to provide adequate police
> protection or security, (b) failure to prevent the commission of
> crimes by fellow passengers or third persons, or (c) failure to
> apprehend criminals." *Eagan*, 158 Ill. 2d at 532.

The court characterized the plaintiff's complaint as essentially alleging that the CTA was liable because it failed to prevent the commission of the criminal attack on the plaintiff by a third party. The court found that the allegations fell within the provisions of the Act and affirmed the dismissal of the complaint. *Eagan*, 158 Ill. 2d at 532, 535.

There is no dispute in this case that the language of section 27 as well as the decisions in *Bilyk* and *Eagan* indicate that section 27 immunizes the CTA from tort liability for any failure to protect passengers from criminal acts of third parties. This issue in this case, however, is whether it was proper to determine on a motion for summary judgment that the contact that either

third party made with plaintiff was a criminal act and specifically a battery. Because we conclude that questions of material fact exist as to whether the contact made to plaintiff was a battery, it is premature to consider the issue of whether the CTA is immune from liability under section 27 of the Act.

As an alternative basis for affirming the circuit court's judgment, the CTA contends that summary judgment was appropriate because plaintiff cannot prove that the CTA proximately caused her injuries. The CTA asserts that "the two fellow passengers who battered plaintiff and inflicted her injuries constitute subsequent intervening causes" and relieved the CTA of liability. In granting summary judgment, the circuit noted that the CTA raised this argument but stated that questions of causation "are usually ones of fact." Based upon our *de novo* review of the limited record before us, we cannot conclude as a matter of law that plaintiff is unable to establish that the CTA proximately caused her injuries.

For the foregoing reasons, we reverse the judgment of the circuit court and remand the cause for further proceedings consistent with this opinion.

Reverse and remanded.

GARCIA, P.J., and R.E. GORDON, J., concur.