2017 IL App (1st) 170607

No. 1-17-0607

Fourth Division
December 21, 2017

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| MARTHA NUNEZ, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellant, | ) |  |
|  | ) | No. 15 M1 301696 |
| v. | ) |  |
|  | ) | The Honorable |
| LOURDES DIAZ, | ) | Deborah J. Gubin, |
|  | ) | Judge Presiding. |
| Defendant-Appellee. | ) |  |
|  | ) |  |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Martha Nunez filed a complaint alleging negligence against her landlord, defendant Lourdes Diaz, after plaintiff fell down a second-story staircase. Plaintiff alleged that defendant failed to repair a loose cap on a newel post at the top of the staircase, and as plaintiff reached for the post to regain her balance, the cap came loose, contributing to plaintiff's fall, causing her injuries. Defendant filed a motion for summary judgment, which the trial court granted. Plaintiff appeals, arguing that (1) the trial court erred in determining there was no question of fact as to the existence of a defective condition in the stairwell and

(2) plaintiff's deposition testimony supported a finding that defendant had notice of the defective condition. For the reasons that follow, we reverse the trial court's judgment.

¶ 2                                    BACKGROUND

¶ 3         On July 14, 2015, plaintiff filed a complaint against defendant, alleging that on October 5, 2013, she lost her balance descending a staircase in a building located on North Springfield Avenue in Chicago that was owned by defendant. Plaintiff alleged that the staircase did not have a handrail and that defendant "knew or should have known that said stairs represented a dangerous condition to those lawfully on the premises." Plaintiff alleged that defendant "had a duty to maintain the aforementioned premises in a safe and reasonable manner so as to prevent injury to those lawfully on the premises" and breached that duty by "[c]arelessly and negligently operat[ing], manag[ing], maintain[ing] and controll[ing] the premises"; "[c]arelessly and negligently fail[ing] to take any safety precautions whatsoever to remove and/or prevent the dangerous condition, knowing *** that [her] failure to do so represented a danger to those lawfully on the premises"; and "[c]arelessly and negligently fail[ing] to provide handrails for those lawfully on the premises." Plaintiff alleged that, as a result of defendant's conduct, plaintiff "sustained severe and permanent injuries."

¶ 4         On September 10, 2015, defendant filed an answer to plaintiff's complaint admitting that she owned the property located on North Springfield Avenue and admitting "only those duties imposed by law, [and] den[ying] the existence of any and all other duties ***." Defendant also filed an affirmative defense, alleging that plaintiff was injured because she "[f]ailed to keep a proper lookout for her own safety," "[f]ailed to properly watch where she was going," "[f]ailed to observe the open and obvious condition complained of," and "[o]therwise proceeded in a careless manner such that she lost her balance and fell."

Defendant alleged that plaintiff's contributory fault was more than 50% of the proximate cause of the injury for which recovery was being sought, so plaintiff should be barred from recovering damages.

¶ 5    On January 29, 2016, plaintiff filed a motion to voluntarily dismiss her claims against defendants Luis Hernandez, Lourdes Hernandez, and Lourdes Cintron,[1] which was granted on February 18, 2016. After this dismissal, defendant was the sole defendant remaining.

¶ 6    On July 18, 2016, defendant filed a motion for summary judgment. The motion claimed that plaintiff resided at the North Springfield Avenue residence pursuant to a lease agreement between plaintiff and defendant that began in September 2012 and continued on a month-to-month basis through the time of her fall.  The motion further claimed that the stairway where plaintiff fell exclusively serviced plaintiff's second-floor apartment and that no other tenants used the stairway. The motion claimed that the stairway contained a post to service the top several steps and, after an "elbow" made by the first three to four steps, contained a handrail for the remaining steps. Plaintiff claimed she slipped for an unknown reason while on the wood stairway and tried to hold onto the cap on the post at the top of the stairs, but the cap came off and plaintiff fell, sliding down the remainder of the steps while sitting.

¶ 7    The motion claimed that defendant owed no duty to plaintiff since the location of plaintiff's fall was not in an area of the building controlled by defendant. Additionally, the motion claimed that even assuming *arguendo* that defendant owed a duty to plaintiff, plaintiff failed to establish that defendant was liable because plaintiff did not present any

---

[1]Plaintiff initially filed her complaint against both defendant and an individual named Luis Hernandez. The record is unclear as to any relationship Luis Hernandez had to the property, but there is no dispute that defendant was the sole owner. Lourdes Hernandez and Lourdes Cintron were listed as potential alternate names for defendant.

evidence that the condition of the premises presented an unreasonable danger and that defendant had notice of any such condition.

¶ 8     Attached to the motion for summary judgment was a copy of plaintiff's lease agreement with defendant,[2] entered into on September 15, 2012. Section 7 of the lease is entitled "Alterations and Improvements" and provides:

"7. ALTERATIONS AND IMPROVEMENTS. Lessee shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of Lessor. Any and all alterations, changes, and/or improvements built, constructed, or placed on the Premises by Lessee shall, unless otherwise provided by written agreement between Lessor and Lessee, be and become the property of Lessor and remain on the Premises at the expiration or earlier termination of this Agreement."

Section 11 is entitled "Maintenance and Repair; Rules" and provides, in pertinent part:

"11. MAINTENANCE AND REPAIR; RULES. Lessee will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Lessee shall:

(a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

* * *

---

[2]The actual lease agreement is between Hugo Raices and Miguel Arias. Plaintiff testified at her deposition that Arias was her husband, and defendant testified at her deposition that Raices was her brother and property manager.

(k) Deposit all trash, garbage, rubbish or refuse in the locations provided therefor and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements[.]"

¶ 9    Also attached to the motion for summary judgment was plaintiff's June 7, 2016, discovery deposition testimony. Plaintiff testified that at the time of her fall, she was occupying the second floor of the North Springfield Avenue residence with her husband and children. The residence had a wooden staircase leading up to the second floor, which exclusively served the second-floor unit; the first-floor unit had a different entrance, and other than the second-floor tenant, the only person who would use the staircase would be defendant's brother, who would use the stairs if he was "doing something with the unit." From the landing at the top of the stairs, the staircase consisted of three or four triangular steps making an "elbow" or right angle, after which the staircase straightened out and continued to the first floor. The staircase had a post around which the triangular steps rotated, then a handrail existed for the straight portion of the staircase. At the bottom of the staircase was a door, which led to a small porch area and an exterior door.

¶ 10    Plaintiff testified that on October 3, 2013, she slipped on the top step and fell down the staircase, falling in such a way that her bottom struck the staircase, and she slid down to the bottom, hitting her head on a stair on her way down. Plaintiff was asked what caused her to slip, and responded, "I don't know. I don't remember," but also testified that "the wood [on the staircase] is slippery." Plaintiff testified that as she began to fall, she tried to hold onto the post at the top of the stairs, but the cap on the top of the post "wasn't even screwed on. It came off, and then I went all the way down."

¶ 11      Plaintiff was asked how long the cap "had been in that condition, the not-secured-on?" She testified that "[i]t could have been before we moved in. I don't know." However, plaintiff testified that she believed her husband "mentioned it, not to the landlord but her brother, which [*sic*] was the person he kind of dealt with." Plaintiff further testified:

> "Q. So at what point did your husband mention to Ms. Diaz's brother that there was some issue with the stairwell?
>
> A. Once it was hanging out.
>
> Q. Do you recall when that happened?
>
> A. No.
>
> Q. All right. It was at some point before your fall; is that correct?
>
> A. Yes.
>
> Q. And you personally were aware of that as well. You'd encountered that before; is that correct?
>
> A. Yes."

¶ 12      Also attached to the motion for summary judgment was a copy of three photographs that had been used as exhibits during plaintiff's deposition, showing the second-story staircase from different angles. While the copies included in the record on appeal are of poor quality, the first image depicts the staircase from an angle as though someone was standing in front of the staircase and looking up. In this image, the staircase appears to be straight for seven or eight steps, after which the steps appear to curve to the left; only the first two curving steps are depicted in the image. The second image depicts a bird's-eye view of the staircase, as though someone was looking from the ceiling down at the staircase. In this image, there is a landing at the top of the stairs, after which there appear to be four triangular steps rotating

6

around a post, followed by steps leading straight down. The cap on top of the post is circled in the image, as plaintiff testified about it during her deposition. The third image depicts a different bird's-eye view of the staircase, as though someone was standing at the top of the staircase and looking down. This image again appears to show four triangular steps curving the staircase to the right, after which the staircase straightens.

¶ 13     On August 25, 2016, plaintiff filed an emergency motion to reopen discovery, strike arbitration, and strike the motion for summary judgment and/or for an extension of time to file a response. Plaintiff claimed that it had recently been discovered that defendant's deposition had not been taken and requested leave to do so. Plaintiff also asked for the motion for summary judgment to be stricken, claiming that the lease attached to the motion for summary judgment "is not even valid as it is not signed by the owner and for various reasons it violates the law and the City of Chicago Landlord and Tenant ordinance." The trial court granted plaintiff leave to depose defendant and extended the time for plaintiff to respond to the motion for summary judgment.

¶ 14     On September 16, 2016, plaintiff filed a response to the motion for summary judgment, claiming that the stairway was a common area under defendant's control and pointing to defendant's testimony, in which "Defendant admits the stairway is a common area where she would make any necessary repairs (which she did not want the tenants to do)." Plaintiff also claimed that there were questions of fact as to whether the loose cap was a dangerous condition and as to notice to defendant.

¶ 15     Attached to plaintiff's response was defendant's September 7, 2016, discovery deposition testimony. Defendant testified that she is the owner of the property located on North Springfield Avenue in Chicago, which was divided into three units: a first-floor unit, a

7

second-floor unit, and a garden unit "that's merged with the first floor." Defendant's mother resided in the first-floor unit, and defendant's brother was her property manager. Defendant testified that "[t]he first floor has its own separate entrance, and then the second floor has its own proper entrance as well." Defendant further explained that "[t]here is one main door; but when you walk in to go to the first floor, it's right there. If you go to the second floor, there's a door there that leads to the stairs to go up to the second floor."

¶ 16 Defendant testified that there was a key to the door leading to the staircase, "but they never use a key," and the stairwell was kept unlocked. Defendant further testified that the stairwell area contained a light fixture, and she changed the lightbulbs on that fixture. She also paid the electricity for that fixture; when asked what other portions of the building she paid for, she testified that she paid for electricity for "[j]ust the main floor, the hallway lights, the outside lights, the back lights."

¶ 17 Defendant was asked several questions about the lease agreement. Concerning the provision prohibiting alterations to the unit, defendant testified that while a tenant would be permitted to paint the inside of the apartment, the tenant would not be permitted to paint the stairwell; defendant was the one who painted the stairwell. The tenant would similarly be prohibited from storing a bicycle or garbage in the stairwell. Defendant testified that the prohibition against garbage in the stairwell came from section 11 of the lease:

"Q. In fact, in your lease I believe it's (k)—it's 11(k). It says, 'Deposit all trash, garbage, rubbish, or refuge [*sic*] in the locations provided therefore, and shall not allow any trash, garbage, rubbish, or refuse to be deposited or permitted to stand on the exterior of the building or within the common elements.' Do you see that?

A. I do.

Q. And the reason that you wouldn't allow [garbage] on the stairwell is because of this paragraph, correct?

A. Yes.

Q. You wouldn't allow them to just store garbage somewhere on the outside of the building; you wouldn't allow it in the stairwells, correct?

A. Yes.

Q. And that's because it's something that's common; it's a common element of the building, something you control, correct?

A. Yes."

¶ 18    Defendant further testified about the stairs:

"Q. The stairs, that's something that's common, something you control?

A. Are we talking about the front stairs?

Q. Well, let me ask you that.

First, with regard to the front stairs, is that something you control?

A. Yes, the cement stairs in the front, yes.

Q. What about the stairs that lead up to the second floor?

A. I do not provide maintenance. I don't clean it or anything like that. It's the tenant's responsibility to maintain that area because she's the only one that uses it— or the people upstairs. Sorry.

Q. You just said that they're not allowed to store, let's say, a bicycle there; right?

* * *

A. Yes.

Q. Okay. They're not allowed to paint it pink; correct?

A. Yes.

Q. So you do control, to a certain extent, what can be done on that stairwell; correct?

A. To a certain extent, yes."

Defendant also admitted that she did not specifically recall telling plaintiff that she was responsible for the stairwell. Defendant testified that plaintiff and her husband would not be permitted to make repairs to the stairwell themselves because defendant would want to ensure it was professionally done so that it would be up to code. Defendant testified that she would pay for such a repair.

¶ 19     Defendant testified that the second-story stairwell had never been repaired in the 18 years that she had owned the property and that she inspected the stairwell "I'd say every 3 months." She testified that if a tenant had informed her brother that there was a problem with the stairs, he would have informed her, and that she had never received any complaints with respect to the stairs from him. She asked her brother whether he had attempted to fix anything in the stairwell, and he informed her that "[t]he stairs were never damaged, so there was no reason to." Defendant further testified that after plaintiff's fall, she checked the stairs to determine if there was anything wrong with them. She examined the cap on the post at the top of the stairs "and it was still on the way it is today." Defendant testified that the cap "has never been loose" and that "[i]t never had to be" repaired. Although defendant testified she has never had a violation of the city code or local ordinances for her property in the last 18 years, she admitted she has never had her property inspected.

¶ 20　　On examination by her counsel, defendant testified that during the time that plaintiff and her husband were tenants, defendant had accessed the second-floor stairway "maybe once or twice to check the rails, but I don't remember the time frame." Defendant further testified that the only person other than the second-floor tenants who had a key to the second-floor staircase was herself. Defendant also testified that she had not needed to perform any repairs—even changing a lightbulb—during the entire length of plaintiff's tenancy. Finally, defendant testified that the lease provided that she had the right to inspect the premises and make any necessary repairs.

¶ 21　　Also attached to plaintiff's response to the motion for summary judgment was defendant's answers to interrogatories, in which defendant stated that she "[did] a walk through once a month" with respect to the location of plaintiff's fall.

¶ 22　　On September 27, 2016, defendant filed a reply to the motion for summary judgment, arguing that defendant did not exercise sufficient control over the stairwell to impose a duty on her. Defendant further argued that, even assuming *arguendo* that there was such a duty, the only "dangerous condition" alleged in plaintiff's complaint was the lack of a handrail and the evidence showed that the stairway did have a handrail. Defendant argued that "[p]laintiff's response brief does not address this argument, instead claiming that an issue of fact exists as to an entirely different—not plead—condition within the demised premises."

¶ 23　　On October 6, 2016, the trial court entered an order granting defendant's motion for summary judgment.

¶ 24　　On November 7, 2016, plaintiff filed a motion to reconsider. The motion claimed that there were fact questions about whether the stairwell was a common area and/or under defendant's control. Additionally, plaintiff argued that there were questions of fact as to the

dangerousness of the handrail and notice. Finally, plaintiff requested leave to amend her complaint to add allegations concerning violations of city of Chicago ordinances requiring handrails.

¶ 25    On February 2, 2017, the court entered an order denying plaintiff's motion to reconsider, stating that "[t]he order dated October 6, 2016, granting defendant's motion for summary judgment was a ruling on defendant's argument section II[3] of the motion dated July 18, 2016."

¶ 26    On March 2, 2017, plaintiff filed a notice of appeal, and this appeal follows.

¶ 27                                ANALYSIS

¶ 28    On appeal, plaintiff argues that the trial court erred in granting summary judgment because there were questions of fact concerning the existence of a dangerous condition in the stairwell and defendant's notice of such a condition. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

---

[3]Section II of defendant's motion for summary judgment stated even if defendant owed a duty to plaintiff, summary judgment was proper because plaintiff failed to meet her burden to show that a dangerous condition existed on the staircase and that defendant had notice of such a condition.

¶ 29    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 30    "To recover on a negligence claim, the plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from that breach." *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001) (citing *Miller v. National Ass'n of Realtors*, 271 Ill. App. 3d 653, 656 (1994)). If the plaintiff cannot establish any element of her cause of action, summary judgment for the defendant is proper. *Pavlik*, 323 Ill. App. 3d at 1063 (citing *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989)).

¶ 31                                    I. Breach of Duty

¶ 32    While normally our discussion would begin with the question of whether there was a duty, in the case at bar, the trial court granted summary judgment in defendant's favor based

13

on the second point made by defendant in her motion for summary judgment, namely, that even assuming *arguendo* that defendant had a duty concerning the stairway, plaintiff had not established a breach of that duty. Accordingly, we begin with a discussion of whether the trial court properly concluded that defendant had breached her duty to plaintiff.

¶ 33    "There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 44 (2004). "The existence of a duty is a question of law for the court to decide; however, the issues of breach and proximate cause are factual matters for a jury to decide [citation], provided there is a genuine issue of material fact regarding those issues [citation]." *Adams*, 211 Ill. 2d at 43-44.

¶ 34    "Property owners have a duty to exercise ordinary care in maintaining their property in a reasonably safe condition." *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 20. Under section 343 of the Restatement (Second) of Torts:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition of the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."
>
> Restatement (Second) of Torts § 343, at 215-16 (1965). See *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976) (finding that section 343 "correctly states the settled law regarding the liability of possessors of land to invitees").

14

In the case at bar, plaintiff argues that there was a question of fact as to whether there was evidence of a dangerous condition and defendant had notice of such a condition.

¶ 35    As an initial matter, defendant argues that we should not consider plaintiff's claim that the dangerous condition was the unsecured cap on the post because plaintiff did not plead such a condition in her complaint and raised it for the first time in response to the motion for summary judgment. We do not find this argument persuasive. Defendant is correct that "[a] plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in [her] complaint." *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994). However, viewing the allegations of the complaint in the light most favorable to plaintiff, as we are required to do when reviewing a motion for summary judgment (*Home Insurance Co.*, 213 Ill. 2d at 315), we cannot find that plaintiff's argument was forfeited by her failure to include it in her complaint. See *Torf v. Chicago Transit Authority*, 405 Ill. App. 3d 379, 384 (2010) ("[W]hen a court considers a motion for summary judgment, the pleadings must be construed strictly against the movant and liberally in favor of the nonmoving party."). The complaint alleges that the "stairs represented a dangerous condition to those lawfully on the premises" and that defendant was negligent in failing to repair the dangerous condition or to take safety precautions with respect to the stairs. These allegations could certainly encompass the loose cap on the post. Moreover, even plaintiff's allegation that the staircase "did not have a handrail" could arguably encompass the loose cap if construed liberally. The record demonstrates that the post at issue represented the end of the handrail—that is, the first stairs revolved around the post, and then the handrail continued once the stairs straightened. Thus, the post itself could be considered to be part of the handrail, and the allegation could be read to mean that the staircase did not have an *operable*

handrail. In any event, plaintiff's focus on the cap was apparent well before her response to the motion for summary judgment—she clearly testified in her deposition that the cap was the allegedly dangerous condition. Accordingly, we are not persuaded by defendant's argument that we should not consider this claim.

¶ 36    Examining the record in the instant case, we agree with plaintiff that there is a question of fact as to whether the loose cap represented a dangerous condition. The record reveals that the post at issue was located at the top of the staircase, and the cap was on top of the post. As noted, this post was the only part of the handrail available at the top of the stairs. The steps themselves were constructed of wood, and plaintiff described them as "slippery." These facts are sufficient to raise a question of fact as to whether the loose cap was a dangerous condition. Defendant does not argue that the loose cap was not a dangerous condition, simply arguing that a fan-type staircase, such as the one at issue in the case at bar, "is not inherently dangerous under Illinois law." However, in the case defendant cites for that proposition, "the stairs were of ordinary construction and there was no allegation of improper lighting or a foreign substance on the stairs. Likewise, there is no allegation that the stairs were inherently dangerous if used properly." *Carden v. Hunt*, 1 Ill. App. 3d 937, 939 (1971). In the case at bar, plaintiff is not arguing that the stairway itself was inherently dangerous. She is arguing that permitting a loose cap to remain on top of a post at the top of the stairs renders the staircase unreasonably dangerous. That is a completely different issue, and we find that plaintiff has presented a question of fact that should be determined by the factfinder.

¶ 37    We also find that there is a question of fact concerning notice. "[T]here is no liability for a landowner for dangerous or defective conditions on the premises in the absence of the landowner's actual or constructive knowledge." *Tomczak v. Planetsphere, Inc.*, 315 Ill. App.

16

3d 1033, 1038 (2000). In the case at bar, there is a question of fact as to whether defendant had actual knowledge of the loose cap. Plaintiff testified that her husband had mentioned the issue to defendant's brother, the property manager, several times. Defendant denied receiving notice, testifying that her brother would have notified her of any complaints and that he had not done so. This represents a quintessential question of fact. Moreover, there is a question of fact as to whether defendant had constructive notice. "Generally, if a plaintiff is relying on proof of constructive notice, he or she must establish that the dangerous condition existed for a sufficient time or was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care." *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 100. "Whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on the property is a question of fact." *Racky*, 2017 IL App (1st) 153446, ¶ 100. Plaintiff testified that the cap had been loose for a long time, perhaps even prior to her moving in. Defendant, by contrast, testified that she had never noticed any problems with the staircase. Again, this represents a question of fact to be resolved by the factfinder. Accordingly, summary judgment should not have been granted on this basis.

¶ 38    Finally, defendant makes a brief argument concerning proximate cause. "Proximate cause is generally an issue of material fact in a negligence suit." *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). "Liability cannot be predicated on conjecture; rather, proximate cause is established when there is reasonable certainty that the defendant's acts or omissions caused the injury." *Strutz v. Vicere*, 389 Ill. App. 3d 676, 679 (2009) (citing *Kimbrough v. Jewel, Cos.*, 92 Ill. App. 3d 813, 817 (1981)). Defendant argues that, in the instant case, because plaintiff did not know what caused her to fall, "[t]here is no competent evidence suggesting that any alleged negligent act of defendant caused her to fall." While plaintiff did not know

what initially caused her to lose her balance, plaintiff was very clear in testifying that she attempted to break her fall by grabbing onto the top of the post and that the cap came off in her hand. Thus, plaintiff alleged facts suggesting that defendant's actions in not repairing the cap directly led to her falling down the stairs. This is not the type of case in which the plaintiff speculates as to what led to her injuries. See, *e.g.*, *Vertin v. Mau*, 2014 IL App (3d) 130246, ¶ 14. Here, plaintiff in fact grabbed onto the post in order to break her fall and the cap came off in her hand due to defendant's failure to repair it. We find that this is sufficient to raise a question of fact as to the issue of proximate cause.

¶ 39                                          II. Duty

¶ 40        Defendant argues that, as an alternative basis for appeal, plaintiff failed to establish the existence of a duty and, therefore, summary judgment was properly entered in defendant's favor. Plaintiff correctly points out that the trial court did not rely on this aspect of defendant's motion for summary judgment in granting the motion. However, as noted, we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer*, 230 Ill. App. 3d at 50.

¶ 41        " '[W]ithout a showing from which the court could infer the existence of a duty, no recovery by a plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' " *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 995 (2005) (quoting *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 216 (2005)). "However, though a question of law, if there is a dispute of material fact affecting the existence of an undertaking of a duty, summary judgment is improper." *Bourgonje*, 362 Ill. App. 3d at 995. See also *Protective Insurance Co. v. Coleman*, 144 Ill. App. 3d 682, 686, 688 (1986).

¶ 42　　"Ordinarily, \*\*\* the mere relationship of landlord and tenant creates no duty to make repairs, and absent an express covenant or stipulation binding him to make repairs or keep the property in repair, his obligation is absent." *Cuthbert v. Stempin*, 78 Ill. App. 3d 562, 568 (1979). " 'Only the party in control of the premises can be held liable for a defective or dangerous condition on the premises.' " *Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 22 (quoting *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d) 110943, ¶ 38). "It is axiomatic that if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. [Citations.] Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control." *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 220-21 (1988). "The basic rationale for lessor immunity has been that the lease is a conveyance of property which ends the lessor's control over the premises, a prerequisite to the imposition of tort liability." (Internal quotation marks omitted.) *Gilley v. Kiddel*, 372 Ill. App. 3d 271, 275 (2007). There are exceptions to this general rule, however, and thus, for instance, "a lessor may be liable (1) where the lessor has expressly agreed to keep the premises or parts of it in good repair; or (2) where the lessor has voluntarily assumed the maintenance obligation by its conduct." *Fan v. Auster Co.*, 389 Ill. App. 3d 633, 648 (2009). See also *Hanna*, 2016 IL App (1st) 143727, ¶ 32 (holding a tenant was not responsible for maintaining countertops injuring a contractor when the landlord was responsible for fixing and maintaining the fixtures in the premises).

¶ 43　　In the case at bar, plaintiff argues that the evidence established that defendant, not plaintiff, controlled the stairwell and, therefore, defendant owed plaintiff a duty to maintain

19

the stairwell in a reasonably safe condition; at the very least, plaintiff argues that there is a question of fact as to this issue. Defendant, by contrast, argues that the stairwell was under plaintiff's control.

¶ 44    There are several cases involving similar situations that the parties rely on in support of their arguments. Plaintiff primarily relies on *Gula v. Gawel*, 71 Ill. App. 2d 174, 177 (1966), in which the plaintiff tenant filed suit against her landlord after falling down the front stairway from her apartment. In that case, the plaintiff resided in the second-floor apartment of a two-story building under an oral month-to-month tenancy and claimed that (1) the defendant maintained and controlled the stairway for the common use of all persons rightfully on the premises; (2) the oral lease provided that the defendant would maintain in safe condition and make all repairs on the premises, including the stairway; (3) the defendant would keep a key to the plaintiff's apartment for the purpose of making repairs and would use the front stairway to access the apartment; (4) the defendant had made all repairs on the premises, still retained the key, and used the front stairway as the usual means of access to the apartment; and (5) the light illuminating the lower portion of the stairway was controlled by the defendant and the switch to turn on the light was located on the defendant's premises. *Gula*, 71 Ill. App. 2d at 178. By contrast, the defendant claimed that (1) the lease included the renting of the stairway as well as the apartment, (2) the apartment included the front stairway, which had a door at the bottom that locked upon closing and could be opened by a buzzer located on the second floor, (3) the door and stairway were exclusively for the use of the occupants on the second floor, and (4) there was no agreement to make repairs on the stairway. *Gula*, 71 Ill. App. 2d at 178-79. The appellate court found that these conflicting

accounts demonstrated the existence of a question of material fact, making summary judgment improper. The court noted:

> "Proof by the plaintiff of the terms and conditions of the oral lease as alleged by her would support the conclusion that the lease was of the second floor apartment only and negate the contentions of the defendant that the stairway leading to the apartment was included in the lease. Proof of an agreement to make repairs on the stairway, proof of the making of repairs on the stairway, proof of control over its lighting, proof of retention of a right to access to the apartment by the landlord and the use by the landlord of the stairway as the usual or sole means of access would all support an inference that the stairway was a common area for the mutual benefit of the landlord and the tenant and would warrant a jury finding that the landlord retained control. Contrariwise, proof of the allegations of the defendant would support an inference that the premises were under the control of the tenant. In view of the conflicting inferences which could be drawn from the proofs the question of control should be submitted to the trier of fact." *Gula*, 71 Ill. App. 2d at 179.

The court rejected the defendant's argument that a stairway used by a single tenant was a part of the tenant's premises as a matter of law, instead noting that "[w]here a stairway leads, the use to which it is put and by whom, are factors to be considered by the trier of fact along with the intention of the parties, the terms of their lease, the responsibility for repairs, maintenance and illumination and all other factors which tend to show control in either the landlord or the tenant." *Gula*, 71 Ill. App. 2d at 180.

¶ 45    The case primarily relied on by defendant, *Seago v. Roy*, 97 Ill. App. 3d 6 (1981), reached the opposite conclusion, affirming a grant of summary judgment. In that case, the

plaintiff tenant fell through a wooden guardrail on the stairway leading to his second-floor apartment and filed suit against the landlords. *Seago*, 97 Ill. App. 3d at 7. The appellate court noted that "[w]here a stairway or hallway is allocated for the common use of all tenants and the landlord retains control over such areas, he must make them reasonably safe. [Citation.] Failure to repair, then, may make the landlord liable for an injury resulting to a person lawfully in such common areas." *Seago*, 97 Ill. App. 3d at 8. The court further noted that the defendants had denied a responsibility to repair the wooden railing and keep it safe, which raised the legal question of whether such a duty existed. *Seago*, 97 Ill. App. 3d at 8. The court found that, after examining the evidence "which indicates the stairway led only to plaintiff's apartment, there is insufficient evidence to find the [defendants] owed a duty to fix the stairway and its railing." *Seago*, 97 Ill. App. 3d at 8. The court noted that the lease was silent as to which party had the duty to repair the stairway, meaning that "the party who had control over the stairway is the one having the duty to repair." *Seago*, 97 Ill. App. 3d at 8. The court found that the stairway served the plaintiff's apartment exclusively, no other tenants used the stairway, and any repairs made by a prior landlord were minimal. *Seago*, 97 Ill. App. 3d at 8. The court reasoned:

> "Merely because a landlord makes minor repairs or cosmetic changes to rental property, he does not thereby become accountable to fix areas under the tenant's control or assume liability from consequent injuries that occur in those areas. A duty is an affirmative obligation to act or refrain from acting so as to avoid creating an unreasonable risk of harm to another. Where a party's conduct, as opposed to his express agreement, is the premise for imposing such a duty, the acts or omissions giving rise to the conduct must be substantial and clearly delineated. If not, the

22

placement of liability for any resulting injury is anyone's guess. And, the possibility that an accident could happen is no foundation upon which to assign fault. The evidence of record does not support the conclusion that the activities of the [defendants] were of such a degree to establish their control of the stairway. Nor were the few intermittent repairs made by the prior landlord clearly defined, continuous, or substantial to show control. The trial judge was correct in finding the [defendants] did not control the stairway where [the plaintiff] fell. Thus, the [defendants] had no duty to repair. Accordingly, since a duty was not owed, plaintiff's claim could not have succeeded at trial. Summary judgment, given such circumstances, was proper." *Seago*, 97 Ill. App. 3d at 9.

¶ 46     In the case at bar, examining the evidence in the record, there is a question of fact as to whether defendant retained control over the stairway or voluntarily assumed a duty to make repairs. The lease agreement does not expressly delegate control over the stairway to either party, so it is the parties' conduct that is most instructive.[4] See *Seago*, 97 Ill. App. 3d at 8 ("Because the lease agreement was silent, the parties' conduct is the best indication of who had control over the stairway."). It is undisputed that the stairway led solely to plaintiff's apartment and that the second-floor tenants were the only users of the stairway, with the exception of defendant or her property manager, who would occasionally use the stairs to access plaintiff's apartment. The stairway also had a locking door at the bottom, to which only plaintiff and defendant had a key; while plaintiff did not choose to lock the door, the fact remains that the option to do so existed. These facts weigh in favor of a finding that the

---

[4]We also note that plaintiff challenges the enforceability of the lease due to several purported deficiencies in its execution.

stairway was not a common area but instead was essentially an extension of plaintiff's apartment.

¶ 47    However, there are also facts weighing in favor of a finding that the stairway was under defendant's control or, at the very least, that defendant voluntarily assumed a duty to make repairs to the stairway. For instance, defendant periodically inspected the stairway and paid for the electricity for the light fixture. Most critically, however, defendant testified that plaintiff would not have been permitted to paint the stairway or make repairs to it and, if such repairs were to be made, defendant would hire a professional to perform such repairs and would pay for them herself. At oral argument, defendant's counsel suggested that defendant had been referring to only structural repairs. However, defendant's testimony makes clear that she was not asked specifically about structural repairs until several questions later:

"Q. If [plaintiff] or her husband wanted to remove the door on the first floor, is that something that you'd allow?

A. No.

Q. Okay. If they had wanted to repair the stairwell that leads to the second floor and you allowed something like that—well, strike that.

Would you allow them to repair the stairwell themselves?

A. No.

Q. Because you wouldn't know if it was up to code or if it was done right; correct?

A. Yes.

Q. And you wouldn't allow them to make any structural changes to the stairs; correct?

A. Correct.

Q. Because something like that you'd want to make sure was up to code; you'd want to make sure that you did that yourself, correct?

A. Professionally done.

Q. Okay. And if they wanted something like that, you would hire a professional to do it?

A. Correct."

Thus, defendant's answer was not limited to structural repairs. To the extent that defendant argues that it should be interpreted in that way, this again represents a question of fact for the trier of fact to resolve. Defendant also expressly admitted that she retained control "[t]o a certain extent." Thus, there exists a question of fact as to whether defendant owed plaintiff a duty with respect to the staircase.

¶ 48    We are not persuaded by defendant's arguments that the control exercised by defendant was merely to ensure compliance with building codes or to exercise rights given to defendant in the lease agreement. While these may be factors to be considered by a trier of fact, summary judgment is not the place to undertake an analysis of the intent of defendant in taking certain actions with respect to the stairwell.

¶ 49                                         CONCLUSION

¶ 50    For the reasons set forth above, the trial court's grant of summary judgment is reversed because there are questions of fact as to whether defendant owed plaintiff a duty concerning the stairwell and had notice of a dangerous condition in the stairwell.

¶ 51    Reversed.